1

2

3                           UNITED STATES DISTRICT COURT

4                         NORTHERN DISTRICT OF CALIFORNIA

5

6

7    GLORIA STITT, RONALD STITT, JUDI          Case No.: 12-cv-03892-YGR
     SHATZER, MARKET ZIRLOTT, and TERRI
8    LOUISE ZIRLOTT, individually and on       **ORDER GRANTING IN PART AND DENYING IN
     behalf of other members of the general public   PART DEFENDANTS' MOTION TO DISMISS**
9    similarly situated,

10              Plaintiffs,

11         vs.

12
     CITIBANK, N.A. and CITIMORTGAGE,
13   INC.,

14              Defendants.

15

16

17          Named Plaintiffs Gloria Stitt, Ronald Stitt, Judi Shatzer, Mark Zirlott, and Terri Louise

18   Zirlott filed a Class Action Complaint against Defendants Citibank, N.A. and CitiMortgage, Inc.

19   (collectively, "Citi" or "Defendants").  (Dkt. No. 1-1.)  Plaintiffs allege Citi engaged in fraudulent

20   practices by charging marked-up or unnecessary fees in connection with Defendants' home

21   mortgage loan servicing businesses.  This action was filed separately as to these Defendants

22   pursuant to a previous order of the Court.  (*See Bias, et al. v. Wells Fargo & Co., et al.*, Case No.

23   12-cv-00664-YGR [Dkt. No. 59].)

24          Defendants filed a Motion to Dismiss on August 21, 2012, seeking dismissal of the

25   Complaint with prejudice.  (Dkt. No. 5.)  On September 4, 2012, Plaintiffs filed their Opposition to

26   the Citi Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 7.)  Citi

27   filed their Reply in Support of Motion to Dismiss on September 13, 2012.  (Dkt. No. 12.)  The

28   Court held oral argument on November 6, 2012.  (Dkt. No. 18.)

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1  Having carefully considered the papers submitted and the pleadings in this action, oral

2  argument at the hearing held on November 6, 2012, and for the reasons set forth below, Plaintiffs'

3  first claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and

4  second claim for conspiracy to violate RICO are **DISMISSED WITH LEAVE TO AMEND**.  The Court

5  **DENIES** Defendants' Motion to Dismiss the third claim for unjust enrichment and fourth claim for

6  fraud.

7  **I.    FACTUAL AND PROCEDURAL BACKGROUND**

8  Plaintiffs allege that Defendants have engaged and continue to engage in fraudulent

9  practices in connection with their home mortgage loan servicing business.[1]  (Compl. ¶ 2.)

10  Defendants allegedly adopted a uniform practice designed to maximize fees assessed on delinquent

11  borrowers' accounts.  (*Id.* ¶¶ 2–4.)  As part of a fraudulent scheme, Defendants "formed an

12  enterprise with their respective subsidiaries, affiliates, and 'property preservation' vendors, . . .

13  unlawfully mark[ed] up default-related fees charged by third parties[,] and assess[ed] them against

14  borrowers' accounts" for an undisclosed profit.  (*Id.* ¶ 9.)  Specifically, "Defendants order[ed]

15  default-related services from their subsidiaries and affiliated companies, who, in turn, obtain[ed]

16  the services from third-party vendors."  (*Id.* ¶ 41.)  The third-party vendors charged Defendants for

17  their services, but Defendants "assess[ed] borrowers a fee that [wa]s significantly marked-up from

18  the third-party vendors' actual fees for the services."  (*Id.*)  Through the unlawful enterprise,

19  Defendants marked-up fees charged by vendors, "often by 100% or more," and failed to disclose

20  the mark-ups and hidden profits to borrowers.  (*Id.* ¶ 4.)

21  In addition to marked-up fees, Defendants had a "practice of routinely assessing fees . . .

22  _____

[1] Plaintiffs are citizens of New York, Maryland, or Alabama who have mortgages serviced by
23  CitiMortgage.  (Compl. ¶¶ 18–22, 59–61, 64–65 & 68–70.)  Plaintiffs allege that Citibank, N.A. is a
national bank organized and existing as a national association under the National Bank Act, 12
24  U.S.C. section 21, *et seq*., with its principal place of business in New York, New York.  (*Id.* ¶ 23.)
Plaintiffs further allege that Defendant CitiMortgage, Inc. is a subsidiary of Citibank, N.A. and is a
25  New York corporation with its principal place of business in Missouri.  (*Id.* ¶ 24.)  Plaintiffs assert
that Citibank, N.A. exercises specific and financial control over CitiMortgage Inc.'s operations,
26  dictates its policies and practices, exercises power and control over it with regard to the conduct
alleged in the Complaint, and is alleged to be the ultimate recipient of the "ill-gotten gains" alleged
27  in the Complaint.  (*Id.* ¶ 27.)  Citigroup, Inc. is the parent company of Defendants Citibank, N.A.
28  and CitiMortgage, Inc.  (*Id.*)

1   even when they [we]re unnecessary." (Compl. ¶ 4.) Plaintiffs allege that: "even if the property

2   inspections were properly performed and actually reviewed by someone at the bank, Citi's

3   continuous assessment of fees for these inspections on borrowers accounts [*sic*] [wa]s still improper

4   because of the frequency with which they [we]re performed. If the first inspection report show[ed]

5   that the property [wa]s occupied and in good condition, it [would be] unnecessary and inappropriate

6   for Citi's system to automatically continue to order monthly inspections. Nothing in the reports

7   justifie[d] continued monitoring." (*Id.* ¶ 52.)

8        Plaintiffs allege that their mortgage contracts disclosed that Defendants will pay for default-

9   related services when necessary, which would be reimbursed by borrowers, but "[n]owhere [wa]s it

10  disclosed to borrowers that the servicer may mark-up the actual cost of those services to make a

11  profit, nor d[id] it permit such fees to be assessed on borrowers' accounts when they [we]re

12  unnecessary." (Compl. ¶ 43.) Defendants identified the marked-up fees as "Delinquency

13  Expenses" on mortgage statements. (*Id.* ¶¶ 10, 49 & 50.) Defendants "le[ft] borrowers unable to

14  know the true nature of the fees that [we]re assessed under the 'Delinquency Expenses'

15  description" because they merely gave borrowers, in statements and other documents, "a list of

16  potential types of fees without a true itemization." (*Id.* ¶ 105.) Specifically, Defendants told

17  borrowers that the "Delinquency Expenses" were "third-party expenses such as property inspection

18  fees, property preservation costs, appraisal costs, and attorney fees" occurred as a result of default.

19  (*Id.*) Plaintiffs allege that the marked-up fees included Broker's Price Opinion fees ("BPOs") and

20  appraisal fees. (*Id.* ¶¶ 31 & 44–49.)

21       Plaintiffs also allege that Defendants used two software programs (CitiLink and Maestro

22  [the "Programs"]), which were designed to manage borrowers' accounts and assess fees according

23  to protocols and policies designed by executives at Citibank, N.A. and CitiMortgage, Inc. (Compl.

24  ¶¶ 36–37 (also alleging the Programs are proprietary to Defendants).) The management of payment

25  information for loans was automated by these Programs, and all payments were automatically

26  loaded into them. (*Id.* ¶ 38.) With the parameters inputted into the Programs, CitiLink and

27  Maestro "automatically implement[ed] decisions about how to manage borrowers' accounts based

28  on internal software logic," including "automatically assess[ing] late fees, default-related service

United States District Court
Northern District of California

fees, and other charges" when a loan was past due.  (*Id.* ¶ 39.)  Defendants' software Programs and overall practices were designed to ensure that inspections were automatically ordered regardless of whether the inspections were necessary.  (*Id.* ¶¶ 50–51.)

As stated *supra*, Plaintiffs have mortgages serviced by CitiMortgage.  (Compl. ¶¶ 61, 65 & 70.)  As to Plaintiffs Gloria and Ronald Stitt, Defendants "continually assessed fees for default-related services, including property inspections . . . as early as April 19, 2010."  (*Id.* ¶ 62.)  The Stitts allege on information and belief that they "paid some or all of the unlawful fees assessed on their account" but cannot provide detail of every fee assessed because Defendants maintain the complete accounting.  (*Id.* ¶ 63.)  As to Plaintiff Judi Shatzer, Defendants "continually assessed fees for default-related services, including property inspections . . . [f]rom January 2009 to February 2012 . . . for more than 30 property inspections."  (*Id.* ¶ 66.)  Plaintiff Shatzer alleges on information and belief that she "paid some or all of the unlawful fees assessed on her account."  (*Id.* ¶ 67.)  As to Plaintiffs Mark and Terri Louise Zirlott, Defendants "continually assessed fees for default-related services, including property inspections . . . as early as April 19, 2009.  From April 2009 to March 2010, Citi assessed fees for twelve property inspections."  (*Id.* ¶ 71.)  The Zirlotts allege on information and belief that they "paid some or all of the unlawful fees assessed on their account."  (*Id.* ¶ 72.)

As to each Named Plaintiff, the mortgage statements identified the fees as "Delinquency Expenses" but "did not adequately disclose the true nature of the fees assessed" nor did the statements disclose that "such fees may contain mark-ups nor did they state exactly which of those categories of fees were assessed against [Plaintiffs' accounts]."  (*Id.* ¶¶ 62, 66 & 71.)  In addition, they did not state if the fees included more than one category of fee.  As such, the Named Plaintiffs are unable to know if there were other categories of fees that were assessed under the "Delinquency Expenses" description.  (*Id.*)  Plaintiffs allege "Defendants are under a continuous duty to disclose to [them and class members] the true character, quality, and nature of the fees they assess on borrowers' accounts."  (*Id.* ¶ 74.)

In addition, borrowers have suffered harm resulting from: (i) charges for default-related services accumulated over time such that borrowers were driven further into default and/or ensured

4

to stay in default; (ii) damage to credit scores; (iii) the inability to obtain favorable interest rates on future loans because of their default; and (iv) in some cases, foreclosure.  (Compl. ¶¶ 54–58.)

On the basis of the allegations summarized above, Plaintiffs bring this action on behalf of a class of "[a]ll residents of the United States of America who had a loan serviced by CitiMortgage and whose accounts were assessed fees for default-related services, including Broker's Price Opinions, and inspection fees, at any time, continuing through the date of final disposition of this action." (Compl. ¶ 79.)  The Complaint alleges four claims.

Plaintiffs' first claim alleges a violation of RICO, 18 U.S.C. section 1962(c).  (Compl. ¶¶ 93–114.)  The alleged "enterprise" consisted of: (i) Citibank, N.A. and CitiMortgage, Inc., including their directors, employees, and agents; (ii) their subsidiaries and affiliated companies; and (iii) their "property preservation" vendors[2] and their real estate brokers who provide BPOs.  (*Id.* ¶¶ 4, 9, 47 & 96.)  This "association-in-fact" enterprise is an "ongoing, continuing group . . . of persons and entities associated together for the common purpose of limiting costs and maximizing profits by fraudulently concealing assessments for unlawfully marked-up and/or unnecessary third party fees for default-related services on borrowers' accounts."  (*Id.* ¶ 97; *see id.* ¶ 47.)

The enterprise members—while "systematic[ally] linke[ed]" through contractual and financial ties—act according to policies established by Citi executives but also "have an existence separate and distinct from the enterprise." (Compl. ¶¶ 98–99.)  Plaintiffs allege that Defendants' scheme constituted "racketeering activity" based on acts of mail and wire fraud (18 U.S.C. sections 1341 and 1343), by which Defendants fraudulently concealed material information and used the mail and wires to obtain money from borrowers using fraudulent pretenses.  (*Id.* ¶¶ 100–102.)  Plaintiffs seek treble damages under RICO.

Plaintiffs' second claim alleges a conspiracy to violate RICO.  (Compl. ¶¶ 115–119.)  Defendants allegedly conspired to violate RICO as summarized above, were aware of the nature and scope of the enterprise's unlawful scheme, and agreed to participate in said scheme.  Plaintiffs' third claim alleges that Defendants have been unjustly enriched by their wrongful acts and

---

[2] The property preservation vendors include Safeguard Real Estate Properties, LLC, d/b/a Safeguard Properties, LLC.  (Compl. ¶ 96.)

1   omissions of material fact.  (*Id.* ¶¶ 120–129.)  Plaintiffs seek restitution and an order disgorging all

2   profits obtained by Defendants.  Plaintiffs' fourth claim alleges fraud as summarized above.  (*Id.* ¶¶

3   130–141.)

4          In the pending Motion, Defendants argue that Plaintiffs have fundamentally failed to allege

5   Citi did anything wrong because: (i) property inspections are common occurrences when loans are

6   in default; (ii) Plaintiffs fail to allege that Citi had a duty to provide an itemization of fees on

7   mortgage statements; and (iii) Citi charged market rates for BPOs.  (Mot. at 1–2.)  Defendants

8   argue that the RICO claims must be dismissed because Plaintiffs lack standing, but even if they

9   have RICO standing, the RICO and fraud claims fail to allege the required elements with

10  particularity.  Defendants further argue that the conspiracy claim fails because Plaintiffs have not

11  pled an underlying RICO scheme, and have not sufficiently alleged each Defendant knew about nor

12  agreed to facilitate the alleged RICO conduct.  (*Id.* at 2.)  Finally, Defendants argue the unjust

13  enrichment claim cannot proceed where a valid contract governs the same subject matter.  (*Id.* at 2–

14  3.)

15         Plaintiffs oppose all of these arguments and request leave to amend if the Court dismisses

16  any claim.  The Court addresses each claim in turn.

17  **II.   DISCUSSION**

18         **A.      Legal Standards Under Fed. R. Civ. P. 12(b)(6)**

19         Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed against a defendant for

20  failure to state a claim upon which relief may be granted against that defendant.  Dismissal may be

21  based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under

22  a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990);

23  *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir. 1984).  For purposes of

24  evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to

25  be true and draw all reasonable inferences in favor of the nonmoving party."  *Usher v. City of Los

26  Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of

27  the pleading.  *Walling v. Beverly Enters.,* 476 F.2d 393, 396 (9th Cir. 1973).

28         However, mere conclusions couched in factual allegations are not sufficient to state a cause

United States District Court
Northern District of California

1  of action. *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem. Co.,*

2  845 F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim [for]

3  relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A

4  claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw

5  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,*

6  556 U.S. 662, 678 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-

7  conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

8  suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969

9  (9th Cir. 2009).  Courts may dismiss a case without leave to amend if the plaintiff is unable to cure

10  the defect by amendment. *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000).

   **B.    Request for Judicial Notice**

12      Defendants seek judicial notice of eight documents that are either "referred to" or "cited" in

13  the Complaint.  (Request for Judicial Notice in Support of Citibank, N.A. and CitiMortgage, Inc.'s

14  Motion to Dismiss Plaintiffs' Complaint ["RJN"] [Dkt. No. 6]; Declaration of Steven E. Rich in

15  Support of Citibank, N.A. and CitiMortgage, Inc.'s Motion to Dismiss Plaintiffs' Complaint, Exs.

16  A–H [Dkt. No. 5-1].)  The exhibits consist of the following:

17    • Exhibits A, B, and C are deeds of trust and mortgages executed by Plaintiffs Gloria

18       and Ronald Stitt, Judi Shatzer, and Mark and Terri Louise Zirlott, respectively,

19       which were recorded in public records.

20    • Exhibits D, E, and F each consist of a monthly mortgage statement sent to the Stitts,

21       Shatzer, and the Zirlotts, respectively.

22    • Exhibit G is a "public record" of guidelines promulgated by Fannie Mae entitled

23       "Broker Price Opinion Providers and Pricing Structure" dated December 17, 2010.

24    • Exhibit H is a publicly-available "BPO Brief" that is either used and/or was prepared

25       by the "National Association of BPO Professionals."

26  Plaintiffs have not objected to the RJN.  The Court hereby **GRANTS** judicial notice of the requested

27  documents, Exhibits A through H, for determination of this Motion.

28

**C.      Threshold Arguments that Plaintiffs Allege No Improper or Illegal Conduct**

Defendants argue that Plaintiffs' Complaint is fundamentally flawed because no wrongdoing is alleged.  "At its core, Plaintiffs allege that the property inspections . . . happened too frequently[,] . . . the billing statements they received were purportedly too confusing, and the Citi Defendants' BPO fees were allegedly too high."  (Mot. at 6.)  Defendants justify the alleged wrongdoing by explaining that property inspections are necessary to protect the property and emphasize the benefits of inspection compared to the costs.  (*Id.* at 6–7.)  In addition, Defendants challenge the Complaint because fees charged for BPOs were in the price range consistent with Fannie Mae guidelines and the market.  (*Id.* at 10 (costs reflect actual services provided by Defendants and are set in their discretion).)[3]

Plaintiffs respond that this case is about *more* than Defendants passing on the actual fees incurred for services needed to protect their security: "[P]laintiffs *do not* ask this Court to determine how much an appropriate BPO or inspection fee should be, nor do they challenge the banks' ability to charge a BPO or inspection fee."  (*Id.* at 7 (emphasis in original).)  Rather, Plaintiffs allege Defendants marked-up or padded actual fees and used borrowers' default as a way to generate profits, but the mortgage agreements do not disclose such profits.  (Opp. at 4–5.)  Plaintiffs challenge Defendants' concealment of the inflated fees, their use of software Programs that automatically charge inflated fees, and their omission of information that would explain the "true nature" of the fees.  (*Id.* at 7.)

The Court is not persuaded by Defendants' argument that "none of the practices [Plaintiffs] attack are improper or illegal."  (*See* Mot. at 6.)  The Court must take Plaintiffs' allegations as true.  Plaintiffs allege that under their mortgage agreements, they were obligated to pay certain default-related fees, but that Defendants marked-up the fees and charged for unnecessary services.  Plaintiffs received mortgage statements that did not explain what the fees were for, and they paid some or all of the fees believing they were obligated to so pay.  Defendants sent various documents to Plaintiffs to demand payment.  Taking the pleading as true, the Court cannot say as a matter of

---

[3] The Court will address the argument that Plaintiffs fail to allege a duty to disclose an itemization of fees in the sections below.

United States District Court
Northern District of California

1    law that Defendants' conduct was proper.

2         To the extent that Defendants assert the various benefits of property inspections outweigh

3    the costs and that such inspections are legally "necessary," such conclusion is factual in nature and

4    any conclusions would be premature on this record.  Next, Defendants' argument that the prices

5    charged were within the market ranges provided by Fannie Mae guidelines is not case-dispositive at

6    this juncture.  Regardless of whether an amount charged falls within market rate, Plaintiffs allege

7    that they paid more to Defendants than they should have if Defendants had simply passed on actual

8    costs pursuant to the mortgage agreements.  Whether this conduct was proper must be determined

9    on a more developed record.[4]

10        For these reasons, the Court **DENIES** Defendants' Motion based on the generalized argument

11   that the Complaint fails to allege any wrongdoing.

12        **D.    RICO Claims**

13            **1.    RICO Standing: 18 U.S.C. Section 1964(c) ("Section 1964")**

14        The "[c]ivil remedies" provision of RICO permits "[a]ny person injured in his

15   business or property by reason of a violation of [18 U.S.C.] section 1962 . . . [to] sue" and recover

16   treble damages and the cost of the suit, including a reasonable attorney's fee.  18 U.S.C. § 1964(c).

17   "To have standing under [Section] 1964(c), a civil RICO plaintiff must show: (1) that his alleged

18   harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the

19   RICO violation, which requires the plaintiff to establish proximate causation." *Canyon County v.*

20   *Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (internal citation omitted).

21        With regard to the requirement of injury to business or property, "[i]n the ordinary context

22   of a commercial transaction, a consumer who has been overcharged can claim an injury to her

23   property, based on a wrongful deprivation of her money. . . . Money, of course, is a form of

24   ───────────────
     [4] Defendants argue that Plaintiffs have abandoned their challenge regarding the frequency of
25   property inspections and now attempt to rely on inflated costs for property inspections.  (Reply at 1
     & 4.)  Defendants read the Complaint too narrowly.  (*See* Compl. ¶¶ 2, 9, 31 & 34.)  Drawing all
26   reasonable inferences in favor of Plaintiffs and all ambiguities in favor of the pleading, the
     Complaint alleges that inspection fees—which Plaintiffs allege they were charged and paid—are
27   unnecessary and marked-up in the same manner that BPOs.  As such, Defendants' argument that
     the property inspection allegations do not state a claim is unpersuasive.
28

9

United States District Court
Northern District of California

1  property." *Id.* at 976 (internal citation omitted).[5]

2         Defendants argue Plaintiffs lack RICO standing for four reasons.  First, they do not allege

3  they paid any allegedly marked-up fees, only that they paid fees that "may" contain mark-ups.

4  (Mot. at 11; Reply at 6 (arguing Plaintiffs do not allege property inspections *were* marked-up, nor

5  that they *were* charged any BPOs).)  Second, the "unnecessary" monthly inspections reflect market

6  practices required by the industry, and thus they fail to allege concrete financial loss attributable to

7  RICO conduct.  (Mot. at 12; Reply at 7.)  Third, Plaintiffs have not alleged facts establishing mark-

8  ups of BPOs, which were regardless charged at market rate.  (Mot. at 12.)  Fourth, the Named

9  Plaintiffs do not allege they suffered damage to their credit scores or from late payment fees.  (*Id.* at

10  12–13.)

11         Plaintiffs specifically direct the Court to allegations that: (i) had the true nature of the fees

12  been disclosed, Plaintiffs would have been aware of the mark-ups and would have disputed the

13  charges or not paid them; (ii) that they would not have paid the fees if it had not been for

14  Defendants' concealment of material facts; and (iii) Defendants alone maintain a complete

15  accounting of all fee assessed and paid.  (Opp. at 8; *see* Compl. ¶¶ 63, 67, 72, 135 & 137.)  Having

16  alleged that they would have disputed and would not have paid the fees but for Defendants'

17  deception, Plaintiffs contend they have alleged direct financial injury caused by RICO conduct.

18  (Opp. at 9.)

19         The Court agrees with Plaintiffs.  Plaintiffs allege they paid marked-up fees.  The Court is

20  not persuaded that the Complaint must be read as only alleging that BPOs were marked-up.  (*See*

21  n.4 *supra*.)  Nor is the Court persuaded, for reasons stated above, that Plaintiffs lack standing

22  because the total fees assessed fell within market range.  A consumer who has been overcharged

23  can claim injury to property under RICO based on a wrongful deprivation of money, which is a

24  form of property.  *Canyon County*, 519 F.3d at 976; *see Dufour v. BE LLC*, No. C 09-03770 CRB,

---

25  [5] However, where a plaintiff is a governmental entity not acting as a "consumer" but "to enforce the
26  laws or promote the general welfare" the analysis is slightly different.  *Canyon County*, 519 F.3d at
   976–80.  Canyon County sought to recover damages under RICO for monies it spent on public
27  health care and law enforcement services for undocumented immigrants.  *Id.* at 971.  Financial loss
   in *that* specific context was insufficient to allege injury to one's "business or property."  *Id.* at 975–
28  76.  Accordingly, the Ninth Circuit held that the county lacked RICO standing.  *Id.* at 976–80.

1    2010 WL 2560409, at *11 (N.D. Cal. June 22, 2010) ("Plaintiffs here allege that they were

2    deprived of their money based upon Defendants' conduct, which is sufficient.").  In addition,

3    Plaintiffs' losses are sufficiently tied to the alleged RICO conduct.  The Court cannot say as a

4    matter of law that they would have suffered the same injury "with or without the purported RICO

5    scheme."

6         For these reasons, the Court **DENIES** Defendants' Motion to Dismiss the RICO claims based

7    on lack of standing.

8              **2.        Substantive RICO Violation: 18 U.S.C. Section 1962(c) ("Section
                            1962(c)")**
9
           Under Section 1962(c), "[i]t shall be unlawful for any person employed by or

10   associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

11   commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's

12   affairs through a pattern of racketeering activity or collection of unlawful debt."   To a state a

13   claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of

14   racketeering activity."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (*en banc*).

15   Racketeering activity is also referred to as the "predicate acts."  *Living Designs, Inc. v. E. I. Dupont*

16   *de Numours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

17        Where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that

18   course of conduct as the basis of a claim[,] . . . the claim is said to be 'grounded in fraud' or to

19   'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity

20   requirement of [Federal Rule of Civil Procedure] 9(b)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

21   1097, 1103–04 (9th Cir. 2003).  To be alleged with particularity, a plaintiff must allege "the who,

22   what, when, where, and how" of the alleged fraudulent conduct (*Cooper v. Pickett,* 137 F.3d 616,

23   627 (9th Cir. 1997)) and "set forth an explanation as to why [a] statement or omission complained

24   of was false and misleading" (*In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994)

25   (*en banc*)).  In other words, "the circumstances constituting the alleged fraud [must] be specific

26   enough to give defendants notice of the particular misconduct . . . so that they can defend against

27   the charge and not just deny that they have done anything wrong."  *Vess,* 317 F.3d at 1106 (first

28   alteration supplied; internal quotation and citations omitted).  "Rule 9(b)'s requirement that '[i]n all

United States District Court
Northern District of California

11

averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004) (internal citation omitted); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

Defendants challenge Plaintiffs' RICO claim for failure to sufficiently allege: (i) conduct (ii) of an enterprise, and (iii) racketeering activity. The Court will first address conduct of an enterprise.

Section 1962(c) targets conduct by "any person employed by or associated with any enterprise . . . ." The Supreme Court has recognized the basic principle that Section 1962(c) imposes a distinctiveness requirement—that is, one must allege two distinct entities: a "person" and an "enterprise"[6] that is not simply the same "person" referred to by a different name. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 & 166 (2001) (holding that under Section 1962(c), distinctiveness is satisfied and RICO applies "when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner—whether he conducts those affairs within the scope, or beyond the scope, of corporate authority"). The Court noted that the distinctiveness requirement was consistent with a prior holding that liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 163 (quoting *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993)).

An enterprise that is not a legal entity is commonly known as an "association-in-fact" enterprise. *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 871 F. Supp. 2d 933, 939 n.6 (N.D. Cal. 2012). In *Odom v. Microsoft Corp.*, the Ninth Circuit held that "an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." 486 F.3d 541, 551 (9th Cir. 2007) (no requirement of an "ascertainable structure"). "[A]n associated-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* at 552 (quoting *United States v. Turkette*, 452 U.S. 576,

---

[6] A "'person' includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

1    583 (1981)); *Boyle v. United States*, 556 U.S. 938, 944 (2009).  Ninth Circuit precedent requires

2    proof of three elements: (i) a common purpose of engaging in a course of conduct; (ii) evidence of

3    an "ongoing organization, formal or informal"; and (iii) evidence that the various associates

4    function as a continuing unit.  *Odom*, 486 U.S. at 552 (citing *Turkette*).[7]

5            Defendants make three primary arguments with regard to "conduct of an enterprise."  First,

6    they characterize the alleged conduct as nothing more than regular business activities.  Loan

7    serving cannot be transformed into "nefarious RICO conduct" by merely alleging that the fees were

8    fraudulent.  (Mot. at 13–14.)

9            Second, Plaintiffs cannot "indiscriminately lump" Defendants together and must allege facts

10   showing how they each participated in the enterprise.  (*Id.* at 15 (arguing each Defendant is left "to

11   guess" its alleged specific role); *see Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)

12   ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s]

13   plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each

14   defendant separately of the allegations surrounding his alleged participation in the fraud.'")

15   (alterations in original; internal citations omitted).  Defendants assert that Plaintiffs do not allege

16   specifically which Defendant marked up the fees, which concealed the fees, nor which made the

17   determinations as to which borrowers were charged or when properties were inspected.  (Mot. at

18   19.)  Because the alleged racketeering activity fails to "inform each defendant separately of the

19   allegations surrounding [its] alleged participation in the fraud," the RICO claim fails as a matter of

20   law.  (Mot. at 18–19 (citing *Swartz*, 476 F.3d at 764–65) (alteration supplied by Defendants); Reply

21   at 11.)

22           Third, Defendants argue Plaintiffs fail to state plausible facts showing the existence of a

23   common purpose, structure or organization, as required for an enterprise.  (Mot. at 17.)  To this

---

[7] The Ninth Circuit in *Odom* noted that the definition of an enterprise is, based on its text, "not very
demanding."  486 U.S. at 548; *Boyle*, 556 U.S. at 944 ("the very concept of an association in fact is
expansive").  In fact, the Supreme Court has recognized that "RICO is to be read broadly" and is to
"be liberally construed to effectuate its remedial purposes."  *Sedima, S.P.R.I v. Imrex Co., Inc.*, 473
U.S. 479, 497–98 (1985) (quoting Pub. L. 91–452 § 904(a), 84 Stat. 947 (1970)); *see Boyle*, 556
U.S. at 946 (association-in-fact enterprise must have three structural features: a purpose;
relationships among those associated with the enterprise; and longevity sufficient to permit these
associations to pursue the enterprise's purpose).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    argument, Defendants reiterate the "lumping" problem referenced above.

2          Plaintiffs argue that their allegations provide sufficient detail such that Defendants can

3    defend against the charges.  (Opp. at 10.)  CitiMortgage, Inc. is alleged to be the mortgage servicer

4    and subsidiary of Citibank, N.A. (Compl. ¶ 24) that acts with the permission and consent of

5    Citibank, N.A. (*id.* ¶ 26).  Citibank, N.A. exercises specific and financial control over

6    CitiMortgage, Inc., dictates its policies and practices, and ultimate receives the ill-gotten gains.  (*Id.*

7    ¶ 27.)  Moreover, Plaintiffs allege that executives at Citibank, N.A. and CitiMortgage, Inc.

8    organized the fraudulent scheme and carried out the scheme with subordinate employees, third-

9    party property preservation vendors, and real estate brokers.  (*Id.* ¶¶ 27 & 96.)  In sum, Plaintiffs

10   argue they have provided great detail regarding how Defendants used the mail and wires to engage

11   in a scheme to conceal the improperly marked-up and/or unnecessary fees for default-related

12   services.  (Opp. at 11–13.)

13         The Court finds that the roles or participation of each Defendant, Citibank, N.A. and

14   CitiMortgage, Inc., have been pled with sufficient particularity.  Defendants assert it is unclear

15   which Defendant marked-up fees, which concealed the fees, and which made the determinations as

16   to which borrowers were charged or when properties were inspected.  However, the Complaint and

17   *reasonable inferences therefrom* provide that information: CitiMortgage handles the "day-to-day

18   management of loan accounts, including handling customer inquiries, collecting and crediting loan

19   payments, [and] sending default notices to delinquent borrowers."  (Compl. ¶ 6.) The reasonable

20   inference is that CitiMortgage marked-up or charged unnecessary fees when it sent out the

21   mortgage statements demanding payment of the fees.  As for the determinations for who and when

22   to charge, the CitiLink and Maestro Programs "automatically assess[ed]" fees when a loan was past

23   due and property inspections were "automatically trigger[ed] . . . if a loan [wa]s past due by a

24   certain number of days."  (*Id.* ¶¶ 36, 39, 49–52.)  Moreover, executives from both Defendants are

25   also alleged to have organized the fraudulent scheme and designed the protocols of the Programs.

26   (*Id.* ¶¶ 27, 36.)[8]

27   _____

28   [8] (*See also* Compl. ¶ 99 ("These policies and procedures established by Citi's executives include
     providing statements that fail to disclose the true nature of the marked-up or unnecessary fees,
     cryptically identifying default-related service fees as 'Delinquency Expenses,' using mortgage loan

United States District Court
Northern District of California

1    Plaintiffs have further alleged in as much detail as they can the timeframes for when the

2  fees were charged and explained that the mortgage statements specifically failed to disclose the true

3  nature of the fees.  Given the nature of the alleged scheme, this is enough of the "time, place, and

4  specific content of the false representations as well as the identities of the parties" to inform

5  Defendants of the alleged conduct.  *Moore*, 885 F.2d at 541.

6    While the Court disagrees with the "lumping" arguments raised by Defendants, it does

7  agree that Plaintiffs have not sufficiently identified the structure of the enterprise, nor that

8  Defendants have engaged in enterprise conduct distinct from their own affairs.  Throughout the

9  Complaint, Plaintiffs allege that the enterprise includes "subsidiaries," "affiliated companies,"

10 "intercompany divisions," *and* third-party property preservation vendors and real estate brokers.

11 (Compl. ¶¶ 2, 4, 9, 34, 41, 47, 96.)  Defendants "order[ed] default-related services from their

12 subsidiaries and affiliated companies, who, in turn, obtain[ed] the services from third-party

13 vendors."  (*Id.* ¶ 41.)  These vendors charged Defendants for services, but Defendants marked-up

14 the fees in excess of any amounts actually paid.  (*Id.*)  Defendants "provided mortgage invoices,

15 loan statements, payoff demands, or proofs of claims to borrowers" to "demand" payment of fees,

16 but these documents "fraudulently concealed" the true nature of the fees, some of which were

17 "never incurred" at all by Defendants.  (*Id.* ¶¶ 102, 104 & 132.)  Plaintiffs also allege that the

18 enterprise's common purpose was to "limit[] costs and maximiz[e] profits by fraudulently

19 concealing assessments for unlawfully marked-up and/or unnecessary third party fees for default-

20 related services on borrowers' accounts."  (*Id.* ¶ 97.)

21    These allegations stand in contrast to those alleged in a related action, *Bias, et al. v. Wells*

22 *Fargo & Co., et al.*, Case No. 12-cv-00664-YGR.  Here, Plaintiffs repeatedly state that subsidiaries,

23 affiliated companies, and intercompany divisions are members of the enterprise.  However,

24 Plaintiffs fail to specifically identify these members or to provide any factual allegations to detail

25 management software designed to increase the fees assessed on borrowers' accounts, without
consideration for whether the assessment of such fees is necessary under the circumstances, failing

26 to provide borrowers with documentation to support assessments of fees for BPOs, and directing

27 property preservation vendors to conduct services without consideration for whether they are
necessary.").)

28

15

their involvement or make their involvement in the enterprise plausible.  In *Bias*, plaintiffs alleged sufficient structure and distinctiveness to the enterprise largely because it identified Premiere Asset Services ("Premiere"), an intercompany division that was created to give borrowers the impression that it was an independent entity.  Premiere sub-contracted with third-party vendors and brokers to conduct the BPOs.  However, Premiere also created fictitious invoices at Wells Fargo's direction, which Wells Fargo used to substantiate the charges it sought to collect from borrowers.  In addition, Wells Fargo never paid these invoices, and instead paid a lower amount directly to third-party vendors and brokers—all of which had been coordinated by Premiere.

In the case of the *Bias* Second Amended Complaint, plaintiffs made specific allegations that Wells Fargo and non-defendant Premiere had associated together for a common purpose, each played different roles to accomplish that purpose, and that Wells Fargo engaged in conduct of the enterprise, not only their own affairs.  Premiere served a critical role to connect Wells Fargo, who designed the scheme to defraud, with the third-party vendors and brokers who provided the default-related services at the core of the scheme.  The interplay between Premiere, Wells Fargo, and the creation of fictitious invoices to perpetuate their "common purpose" of maximizing profits provided a critical piece of the enterprise.

In contrast, Plaintiffs here have vaguely alleged that unidentified subsidiaries, affiliated companies, and/or intercompany divisions order default-related services from third-party vendors and brokers.  No specific factual allegations explain how this occurs, and without this information, the Court cannot ascertain the structure of the alleged enterprise.  Nor can the Court determine whether Defendants have engaged in conduct of the enterprise, as opposed to their own affairs.

In addition, the Court notes that the "common purpose" here is the same as that alleged against Wells Fargo in *Bias*—to limit costs and maximize profits by fraudulently concealing marked-up and/or unnecessary third party fees.  However, an associated-in-fact enterprise must consist of "a group of persons associated together for a common purpose of engaging in a course of conduct."  *Odom*, 486 F.3d at 552 (quoting *Turkette*).  Plaintiffs' Complaint lacks factual allegations that show that the unidentified enterprise members *associated together* with Defendants *for* that alleged common purpose.  This is unlike in *Bias*, where plaintiffs alleged that Wells Fargo

16

had associated with Premiere for a common purpose.

For these reasons, the Court **DISMISSES** Plaintiffs' RICO claim under Section 1262(c) **WITH LEAVE TO AMEND** for failure to sufficiently allege an enterprise.[9]  Plaintiffs' amended complaint must address the deficiencies stated herein, or Plaintiffs may file a motion for leave to amend if future discovery in this action reveals a factual basis for a RICO claim.  To the extent that Plaintiffs choose to amend their complaint, Defendants *may not re-argue* on a future motion to dismiss any argument that has been rejected in this Order.  In addition, Defendants *may not raise* for the first time on a future motion to dismiss any argument that was *previously available but not raised* on this Motion.

### 3.   Second Claim: Conspiracy to Violate RICO: 18 U.S.C. Section 1962(d) ("Section 1962(d)")

Under Section 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  The conspiracy defendant "must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* (quoting *Salinas v. United States,* 522 U.S. 52, 65 (1997)).  Moreover, the defendant must also have been "aware of the essential nature and scope of the enterprise and intended to participate in it." *Id.* (quoting *Baumer v. Pachl,* 8 F.3d 1341, 1346 (9th Cir. 1993)).

In *Howard*, the Ninth Circuit affirmed the "district court['s holding] that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." *Id.*; *see Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) (affirming dismissal of RICO claims, including conspiracy, where plaintiffs failed to allege, among other things, acts of mail fraud, wire fraud, and pattern of racketeering activity).

Here, Plaintiffs have failed to allege the requisite substantive elements of RICO under

---

[9] In light of the Court's dismissal on these grounds, Defendants' arguments regarding racketeering activity are moot and the Court declines to address them.

United States District Court
Northern District of California

1    Section 1962(c), and thus their claim for conspiracy under Section 1962(d) also fails.

2        For these reasons, Plaintiffs' claim for conspiracy under Section 1962(d) is **DISMISSED**

3    **WITH LEAVE TO AMEND**.

4        **E.    Third Claim: Unjust Enrichment**

5        Defendants argue that under California law or the law of any state in which Plaintiffs reside

6    (Alabama, Maryland, or New York), the unjust enrichment claim is not cognizable because

7    Plaintiffs allege the existence of a valid express contract covering the same subject matter.  (Mot. at

8    22.)  Having alleged as such, Defendants conclude that the alleged fees were contractually

9    approved, the claims fall "squarely within" the subject matter of the contracts, and Plaintiffs have

10   no quasi-contractual remedy.  (*Id.* at 22–23.)

11       Plaintiffs refer only to the elements of unjust enrichment under California law and assert

12   they have satisfied the pleading of these elements.  (Opp. at 16.)  Plaintiffs argue their claims are

13   based on fraudulent concealment, not breach of the loan agreements, and thus their allegations of

14   the existence of contracts are irrelevant.  (*Id.* (citing *In re Countrywide Fin. Corp. Mortg. Mktg. &*

15   *Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1220–21 (S.D. Cal. 2009)).)  In *In re Countrywide*,

16   the district court rejected both of defendants' arguments for dismissal of an unjust enrichment

17   claim, holding that "[a]lthough there are contracts at issue in this case, none appears to provide for

18   the specific recovery sought by Plaintiffs' unjust enrichment claim."  *Id.* at 1220–21 (noting

19   conflicting case law regarding whether California recognizes unjust enrichment as a claim and

20   declining to conclude the claim was not legally cognizable).  (*See also* Opp. at 16 (citing *Young v.*

21   *Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1034 (S.D. Iowa 2009) for the proposition that alleged

22   "deceptive business practices can support a claim for breach of contract or fraud, even when the

23   defendant's actions are also contrary to the terms of a valid contract").)

24       In response, Defendants point out that Plaintiffs provide no explanation for why California

25   law applies, but reiterate that regardless of which law applies, Plaintiffs do not allege a viable claim

26   because the existence of a contract precludes recovery.  (Reply at 13.)  Moreover, Defendants

27   emphasize that in *Young*, the court granted a motion for a more definite statement based on

28   plaintiffs' failure to specify which state's law should apply to their common law claims, including

United States District Court
Northern District of California

18

United States District Court
Northern District of California

unjust enrichment.  671 F. Supp. 2d at 1016–17.

The Court declines to engage in a choice of law analysis at this juncture.  Defendants themselves concede that the Court need not make this decision at this time.  Importantly, the Court notes that Plaintiffs will ultimately bear the burden of establishing whether this claim can be certified as a nationwide class.  The *Young* court further noted that district courts have taken different positions on whether the elements of unjust enrichment are materially different across the fifty states.  671 F. Supp. 2d at 1017.

Moreover, the authorities provided by Defendants under Alabama, Maryland, and New York law are not persuasive and do not render Plaintiffs' claim unavailable as a matter of law at the pleading stage.  *See Lemoine Co. of Alabama, L.L.C. v. HLH Constructors, Inc.*, 62 So. 3d 1020, 1028 (Ala. 2010) (holding that a sub-contractor could not recover on theory of quantum meruit for an implied contract against general contractor where condition precedent to payment under express contract was not satisfied); *Janusz v. Gilliam*, 947 A.2d 560, 567–68 (Md. 2008) (noting that unjust enrichment claim may exist "when the express contract does not fully address a subject matter") (internal citations omitted); *Scott v. Fields*, 938 N.Y.S.2d 575, 577–78 (N.Y. App. Div. 2012) (where plaintiff agreed to sell property under an "express contract of sale," that contract governed the subject matter of the underlying action and precluded implied contract claim).  Here, Plaintiffs do not seek to recover damages from Defendants under a theory of an implied contract.  *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) ("Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a *plaintiff who has rendered services* benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant.") (emphasis supplied).  Rather, Plaintiffs seek to recover profits wrongfully obtained by Defendants through fraud.

Although Defendants argue the mortgage agreements preclude the claim here, it is premature for the Court to take a position on whether this action derives solely from the agreements alleged.  *In re Countrywide*, 601 F. Supp. 2d at 1220–21; *Janusz*, 947 A.2d at 567–68.

For these reasons, the Court **DENIES** Defendants' Motion to Dismiss the unjust enrichment claim.

**F.      Fourth Claim: Fraud**

Defendants argue Plaintiffs have not pled with particularity an actionable fraudulent concealment claim under Alabama, Maryland, or New York law, which require: (1) defendant had a duty to disclose an existing material fact; (2) defendant concealed that material fact; (3) defendant's concealment induced plaintiff to act or refrain from acting; and (4) plaintiff suffered actual damage as a proximate result.  (Mot. at 24; Reply at 14 ("this Court need not decide which state's law governs" because the result is the same under Alabama, Maryland, New York, *or California* law).)  Defendants assert that Plaintiffs cannot allege either a duty to provide an itemized accounting of the "Delinquency Expenses" on the mortgage statements or a duty to disclose mark-ups because courts are "reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement."  (Mot. at 24 (quoting *Parker v. Columbia Bank*, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992).)  *See Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1190–91 (Ala. 2008) ("relationship between a bank and its customer [is viewed] as a creditor-debtor relationship that does not impose a fiduciary duty on the bank") (internal citations omitted); *Dobroshi v. Bank of America, N.A.*, 886 N.Y.S.2d 106, 109 (N.Y. App. Div. 2009) ("plaintiff's claim of excessive fees fails to overcome the rule that the legal relationship between a borrower and a bank is a contractual one and does not give rise to a fiduciary relationship").

Plaintiffs do not specifically address which state's law applies, but generally respond with two arguments.  First, the allegations are specific enough such that Defendants can defend against the charges.  Second, the Complaint specifically alleges that, under the mortgage agreements, mortgage servicers will pay for default-related services when necessary and borrowers are required to reimburse the servicer.  (Opp. at 17 (citing Compl. ¶ 43).)  The mortgage agreements do not state or permit a servicer to mark-up the actual costs of services for a profit, but Plaintiffs allege this occurred.  (Compl. ¶ 43.)

The Court is not persuaded by Defendants' argument for two reasons.  First, the alleged omissions by Defendants are interwoven with misrepresentations.  Defendants' failure to advise

Plaintiffs of the actual costs for services is linked to the inflated costs that Citi expressly demanded as due in monthly mortgage statements and other documents. Using the mortgage agreements as justification, Defendants allegedly demanded payment for fees that, in some cases, were never actually incurred. Defendants provided "provided mortgage invoices, loan statements, payoff demands, or proofs of claims to borrowers" as part of their demands for repayment. (Compl. ¶ 102.) As alleged, the fraud is equally about the failure to disclose material information as it is that the amounts demanded on mortgage statements were false because they did not correspond to the actual amounts owed pursuant to the mortgage agreements relied upon by Defendants. Based on the alleged nature of the fraudulent scheme, the lack of an explicit "duty to disclose" is not dispositive in light of the affirmative fraud that is also alleged.

Second, Defendants' argument assumes that the only possible duty that could exist is a fiduciary duty, which courts will not infer based solely on a creditor-debtor/banking relationship. However, Defendants' cited authority (i) explicitly states that special circumstances may arise imposing a duty to disclose, and/or (ii) examined the nature of the parties' relationship on a summary judgment motion.

In *Parker v. Columbia Bank*, plaintiffs were borrowers who contracted for a residential construction loan with their bank, and the bank learned (after agreeing to make the loan) that borrowers' builder had financial problems. 604 A.2d at 532–535. The bank did not disclose the builder's financial problems to the borrowers, and the borrowers sued for breach of fiduciary duty and failure to disclose the builder's financial condition to them. *Id.* The trial court found that the borrowers alleged no special circumstances sufficient to impose fiduciary duties on the bank beyond contractual duties. *Id.* at 535 (affirming trial court's dismissal). In *Flying J Fish Farm v. Peoples Bank of Greensboro*, plaintiffs owned a catfish-farming business and received financing from a bank, where two loan officers were shareholders in a catfish-processing business (Alabama Catfish). 12 So. 3d at 1188–89. These officers met with plaintiffs through the years to discuss the loan, and at least one officer offered suggestions to plaintiffs on ways to improve the operation and financial condition of the catfish farm, including encouraging plaintiffs to sell to Alabama Catfish. *Id.* Plaintiffs sued the bank and loan officer for breach of fiduciary duty and suppression of

21

material facts regarding Alabama Catfish's decision to supply its own catfish for its processing plants.  *Id.*  The court found on summary judgment that no fiduciary duty or special circumstances existed here giving rise to a duty to disclose.  *Id.* at 1192–93 (affirming summary judgment on claim of suppression).  Finally, in *Dobroshi v. Bank of America*, plaintiff alleged that the bank underestimated a loan's settlement costs to induce her to obtain the loan from that bank.  886 N.Y.S.2d at 108.  While the court affirmed the summary judgment on the breach of duty to disclose claim, it noted that plaintiff "ha[d] not established that defendant's superior knowledge of essential facts render[ed] the transaction without disclosure inherently unfair."  *Id.* at 109.

None of these cases deal with the factual scenario presented by the Complaint.  In addition, none of them support the proposition that a special circumstance did not exist here, as a matter of law, where an alleged fraud is perpetrated and Defendants affirmatively demanded from borrowers payments that were not reimbursable under the mortgage agreements.

As previously stated, Plaintiffs will ultimately bear the burden of establishing whether their fraud claim can be certified as a nationwide class and the Court declines to engage in a choice of law analysis at this juncture.  However, the Court rejects Defendants' argument that under no potentially applicable law can Plaintiffs state a claim for fraud.  For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss the fraud claim.

## III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.  Specifically, the first and second claims for violation of RICO and conspiracy to violate RICO, respectively, are **DISMISSED WITH LEAVE TO AMEND**.  Defendants' Motion to Dismiss the third claim for unjust enrichment and fourth claim for fraud is **DENIED**.

Plaintiffs must filed an amended complaint within twenty-one (21) days from the date of this Order.  If Plaintiffs do not wish to file an amended complaint at this time, Plaintiffs are granted leave to file a motion for leave to amend if future discovery reveals a factual basis to support the dismissed RICO claims.  In that case, Plaintiffs shall file a notice stating that they intend to stand on the third and fourth claims as pled in the Complaint (Dkt. No. 1), and the Court will deem the Complaint to be operative as of the date of that notice.  Defendants shall have fourteen (14) days to

respond to the amended complaint or the filing of the notice described above.

To the extent that Plaintiffs choose to amend their complaint, Defendants *may not re-argue* on a future motion to dismiss any argument that has been rejected in this Order, *nor may Defendants raise for the first time* on a future motion to dismiss any argument that was *previously available but not raised* on this Motion.

This Order terminates Dkt. No. 5.

**IT IS SO ORDERED**.

Dated: April 25, 2013

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

23