UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GLORIA STITT, ET AL.**,<br><br>    Plaintiffs,<br><br>    v.<br><br>**CITIBANK, N.A., ET AL.**,<br><br>    Defendants. | Case No. 12-cv-03892-YGR<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |

In July of 2012, named plaintiffs Gloria Stitt, Ronald Stitt, Judi Shatzer, Mark Zirlott, and Terri Zirlott ("plaintiffs), individually and on behalf of other members similarly situated filed this action against Citibank, N.A., and CitiMortgage, Inc. (together, "Citi" or "defendants"). (Dkt. No. 1.) Plaintiffs allege that Citi engaged in fraudulent practices by charging unnecessary fees in connection with defendants' home mortgage loan servicing businesses. By Order dated April 25, 2013, the Court granted in part and denied in part defendants' first motion to dismiss and provided plaintiffs leave to amend their complaint. (Dkt. No. 21 ("Order").) On May 27, 2014, the Court granted plaintiffs' unopposed motion for leave to amend (Dkt. No. 67), and plaintiffs promptly filed their First Amended Complaint ("FAC") (Dkt. No. 69; *see also* Dkt. No. 70-2).

Now before the Court is defendants' motion to dismiss plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO") claims. Having carefully considered the papers submitted and the pleadings in this action, oral argument at the hearing held on September 30, 2014, relevant case law, and for the reasons set forth below, the Court hereby **GRANTS** defendants' motion without leave to amend.[1]

---

[1] In conjunction with its motion to dismiss, defendant Citi filed a request for judicial notice of certain documents relating to loan servicing guidelines and managing property inspections.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts alleged in plaintiffs' original complaint are well-known to the parties and are set forth in substantial detail in the Court's previous Order. For the sake of efficiency, the Court will not repeat them here. Rather, because the substance of the instant motion concerns the sufficiency of plaintiff's allegations vis-a-vis their civil RICO claims, the Court will briefly review the deficiencies it identified in plaintiffs' original complaint with respect to only those claims. The Court will then summarize plaintiffs' amended factual allegations, which represent their attempt to cure the identified deficiencies after discovery.

In dismissing plaintiffs' original RICO claims with leave to amend, the Court stated as follows:

> [. . .] Plaintiffs have not sufficiently identified the structure of the enterprise, nor that Defendants have engaged in enterprise conduct distinct from their own affairs. Throughout the Complaint, Plaintiffs allege that the enterprise includes "subsidiaries," "affiliated companies," "intercompany divisions," *and* third-party property preservation vendors and real estate brokers. (Compl. ¶¶ 2, 4, 9, 34, 41, 47, 96.) Defendants "order [ed] default-related services from their subsidiaries and affiliated companies, who, in turn, obtain[ed] the services from third-party vendors." (*Id.* ¶ 41.) These vendors charged Defendants for services, but Defendants marked-up the fees in excess of any amounts actually paid. (*Id.*) Defendants "provided mortgage invoices, loan statements, payoff demands, or proofs of claims to borrowers" to "demand" payment of fees, but these documents "fraudulently concealed" the true nature of the fees, some of which were "never incurred" at all by Defendants. (*Id.* ¶¶ 102, 104 & 132.) Plaintiffs also allege that the enterprise's common purpose was to "limit[ ] costs and maximiz[e] profits by fraudulently concealing assessments for unlawfully marked-up and/or unnecessary third party fees for default-related services on borrowers' accounts." (*Id.* ¶ 97.)
>
> These allegations stand in contrast to those alleged in a related action, *Bias, et al. v. Wells Fargo & Co., et al.,* Case No. 12–cv–00664–YGR. Here, Plaintiffs repeatedly state that subsidiaries, affiliated companies, and intercompany divisions are members of the enterprise. However, Plaintiffs fail to specifically identify these members or to provide any factual allegations to detail their involvement or make their involvement in the enterprise plausible. In *Bias,* plaintiffs alleged sufficient structure and distinctiveness to the enterprise largely because it identified Premiere Asset Services ("Premiere"), an intercompany division that was created to give borrowers the impression that it was an independent entity. Premiere

---

(Dkt. No. 70.)  The Court did not need to consider these documents in resolving this motion. The request for judicial notice is **DENIED** as moot.

> sub-contracted with third-party vendors and brokers to conduct the BPOs. However, Premiere also created fictitious invoices at Wells Fargo's direction, which Wells Fargo used to substantiate the charges it sought to collect from borrowers. In addition, Wells Fargo never paid these invoices, and instead paid a lower amount directly to third-party vendors and brokers—all of which had been coordinated by Premiere.
>
> In the case of the *Bias* Second Amended Complaint, plaintiffs made specific allegations that Wells Fargo and non-defendant Premiere had associated together for a common purpose, each played different roles to accomplish that purpose, and that Wells Fargo engaged in conduct of the enterprise, not only their own affairs. Premiere served a critical role to connect Wells Fargo, who designed the scheme to defraud, with the third-party vendors and brokers who provided the default-related services at the core of the scheme. The interplay between Premiere, Wells Fargo, and the creation of fictitious invoices to perpetuate their "common purpose" of maximizing profits provided a critical piece of the enterprise.
> In contrast, Plaintiffs here have vaguely alleged that unidentified subsidiaries, affiliated companies, and/or intercompany divisions order default-related services from third-party vendors and brokers. No specific factual allegations explain how this occurs, and without this information, the Court cannot ascertain the structure of the alleged enterprise. Nor can the Court determine whether Defendants have engaged in conduct of the enterprise, as opposed to their own affairs.
>
> In addition, the Court notes that the "common purpose" here is the same as that alleged against Wells Fargo in *Bias*—to limit costs and maximize profits by fraudulently concealing marked-up and/or unnecessary third party fees. However, an associated-in-fact enterprise must consist of "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom,* 486 F.3d at 552 (quoting *Turkette*). Plaintiffs' Complaint lacks factual allegations that show that the unidentified enterprise members *associated together* with Defendants *for* that alleged common purpose. This is unlike in *Bias,* where plaintiffs alleged that Wells Fargo had associated with Premiere for a common purpose.

*Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 956-58 (N.D. Cal. 2013).

In their FAC, plaintiffs have made adjustments to their original allegations. Notably, plaintiffs no longer allege improper fee mark-ups as a basis for their RICO claims. Instead, plaintiffs contend only that defendants have engaged in charging class members for unnecessary default-related services, such as property inspections and BPOs.

With respect to the existence of a RICO association-in-fact enterprise, plaintiffs allege that the Citi entities, along with their subsidiaries, affiliated companies, intercompany divisions, and third-party "property preservation" vendors, "formed an unlawful enterprise and decided to game

3

the [lending industry] system." (FAC ¶ 35.) The FAC goes on to allege specifically that (i) Citi, (ii) its subsidiary, (iii) their "property inspection and preservation" vendor Safeguard Real Estate Properties, LLC d/b/a of Safeguard Properties, LLC ("Safeguard"), and (iv) the real estate brokers who provide BPOs for Citi, including Corelogic, "formed an enterprise and devised a scheme to defraud borrowers and obtain money from them by means of false pretenses." (*Id*. ¶ 46.) Plaintiffs further allege that Citibank, N.A., CitiMortgage, Inc., including their directors, employees, and agents, along with property inspection and preservation vendor Safeguard and the real estate brokers who provide BPOs for Citi, including Corelogic (together, the "Citi Enterprise" or "enterprise"), "conducted the affairs of an association-in-fact enterprise." (*Id*. ¶ 96). Plaintiffs allege the enterprise is an "ongoing, continuing group or unit of persons and entities associated together for the common purpose of routinely, and repeatedly, ordering, conducting, and assessing borrowers' accounts for unnecessary default-related services." (*Id*. ¶ 97.) Although the members of the Citi enterprise participate and are part of the enterprise, plaintiffs allege that they nonetheless "have an existence separate and distinct from the enterprise." (*Id.* ¶ 98.) "The Citi Enterprise has a systematic linkage because there are contractual relationships, agreements, financial ties, and coordination of activities between Defendants, their property inspection and preservation vendor Safeguard, and the real estate brokers who perform BPOs, including Corelogic." (*Id*. ¶ 98.)

The crux of plaintiffs' theory concerns the Citi executives' alleged decision to institute a programmed automatic loan management system to order default related services, including property inspections and BPOs, and assess fees against borrowers when their loans fall into default. (*Id*. ¶ 100.) The enterprise allegedly operates according to policies and procedures developed and established by the Citi executives. (*Id.* ¶ 101.) These executives "control and direct" the enterprise and use the other members of the enterprise to carry out Citi's fraudulent scheme. (*Id.* ¶ 99) On a nightly basis, Citi's automated loan management system reviews all loans and then orders inspections of the delinquent properties, without any human intervention. (*Id.* ¶ 101.) Upon receiving the property inspection orders, Safeguard conducts inspections of the delinquent properties "according to policies and procedures developed collaboratively with Citi,"

1 and generates a report. (*Id.* ¶ 102.) After a property inspection is completed by Safeguard,
2 borrowers are assessed fees for the inspection. (*Id.* ¶ 103.) Citi cryptically identifies these fees on
3 borrowers' monthly statements as "Delinquency Expenses." (*Id.*)
4 In the pending Motion, defendants argue that plaintiffs have again failed to state a claim
5 upon which relief can be granted for defendants' alleged civil RICO violations. Plaintiffs,
6 naturally, oppose. The Court now addresses this claim.

**II. FAILURE TO STATE A CLAIM**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).

**A. Substantive RICO Violation: 18 U.S.C. Section 1962(c) ("Section 1962(c)")**

Under Section 1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). As explained in this Court's original Order, to state a claim, plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (*en banc*).

Section 1962(c) requires plaintiffs to allege two distinct entities: a "person" and an "enterprise." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 166 (2001). Section 1962(c) liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 163 (quoting *Reves v. Ernst &*

*Young*, 507 U.S. 170, 185 (1993)). An enterprise that is not a legal entity, such as a corporation, is commonly known as an "association-in-fact" enterprise. *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 871 F. Supp. 2d 933, 939 n.6 (N.D. Cal. 2012). The Ninth Circuit holds "an association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Odom*, 486 F.3d at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *Boyle v. United States*, 556 U.S. 939, 944 (2009). To show an association-in-fact enterprise, plaintiffs must allege facts to establish three elements: (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that provide sufficient evidence the associates function as a continuing unit.[2] *Odom*, 486 F.3d at 553 (citing *Turkette*, 452 U.S. at 583).

Defendants contend that plaintiffs' RICO claims should be dismissed for two independent reasons: (1) failure to allege an association-in-fact enterprise because the FAC lacks allegations that members of that enterprise associated together for a common purpose, and (2) failure to establish that the conduct giving rise to the alleged enterprise is distinct enterprise conduct. Because the Court finds that plaintiffs have again failed to allege an association-in-fact enterprise, it necessarily finds that plaintiffs have failed to allege distinct enterprise conduct.

### 1. Common Purpose

As stated above, the Ninth Circuit holds "an association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Odom*, 486 F.3d at 552 (quoting *Turkette*, 452 U.S. at 583); *Boyle*, 556 U.S. at 944. Defendants contend that the FAC fails to provide sufficient facts to substantiate the common purpose alleged therein, especially vis-a-vis the non-Citi members of the enterprise. The Court agrees.

Again, plaintiffs have not sufficiently identified the existence of an association-in-fact enterprise united for the as-alleged common purpose. While it is true an enterprise only needs to share a common purpose and that the purpose does not need to be fraudulent, here the alleged common purpose at issue is fraudulent in nature. The FAC alleges specifically that the defendants

---

[2] The Court notes that defendants' Motion only addresses the "common purpose" element under *Odom*. As the remaining elements are not at issue, the Court does not address them.

along with Safeguard, their "property preservation" vendors, and the real estate brokers "formed an enterprise and *devised a scheme to defraud borrowers and obtain money from them by means of false pretenses*." (FAC ¶ 46 (emphasis supplied).) The FAC further alleges that the members of the enterprise associated for the common purpose of routinely, and repeatedly, ordering, conducting, and assessing borrowers' accounts for *unnecessary default-related services*." (*See id*. ¶ 97 (emphasis supplied).) That the members of the enterprise "associated together for the common purpose" of executing and charging for "unnecessary" property inspections and "devised a scheme to defraud borrowers" necessarily asserts fraudulent intent on the part of the members of the enterprise – the Citi entities, the real estate brokers, including Corelogic, and Safeguard.[3] Fairly construed, the FAC alleges that the enterprise was formed for the common purpose of effectuating the fraud.[4] Accordingly, plaintiffs' protestations that there need not be a fraudulent purpose and that the vendors could have been "unwitting participants," is inapposite. *Cf. Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 992 (C.D. Cal. 2008) ("Plaintiffs need not allege [the vendors] shared Defendant's fraudulent purpose in order for there to be sufficient allegation of an association-in-fact. To require a common fraudulent purpose would essentially require each member of the enterprise to possess a fraudulent intent"); *see also United States v. Feldman*, 853 F.2d 648, 657-59 (9th Cir. 1988) (The Ninth Circuit found a criminal RICO enterprise even though no other members of the enterprise shared the defendant's *mens*

---

[3] In fact, a review of the FAC as a whole confirms that these non-defendant enterprise members would have likely been the only entities to profit from the scheme plaintiffs allege took place. Provided that plaintiffs are no longer alleging that the Citi defendants marked up the fees, vendors such as Safeguard and Corelogic would be the only entities that could directly profit from conducting the allegedly unnecessary inspections or BPOs. Thus, it can be reasonably inferred that their participation in the fraudulent common purpose, as alleged, is central to plaintiffs' RICO theory.

[4] Representations by counsel at the hearing on this motion underscore the fraudulent nature of the common purpose alleged, despite attorney argument designed to obfuscate the point. At the hearing on this motion, plaintiffs' counsel paradoxically argued that the inspection vendors were both "unwitting" enterprise members *and* that they possessed intent to effect the common, fraudulent purpose. To that end, he stated that although they have not been named as defendants in this and the related *Ellis v. J.P. Morgan Chase* action, Case No. 12-3897, "what we are alleging is that these unwitting property preservation vendors although *clearly knew they were probably doing unnecessary, you know,* [sic] *property inspections every month because nobody was looking at them*." (Tr. at 25:10-14 (emphasis supplied).)

1  *rea*).

2         Leaving aside the requirement under Federal Rule of Civil Procedure 9(b) that allegations
3  of fraud are subject to a heightened pleading standard,[5] the Court finds that plaintiffs have failed to
4  offer sufficient factual allegations in support of their contention that the enterprise formed for the
5  alleged common purpose even under the pleading standard of Federal Rule of Civil Procedure 8.
6  Plaintiffs have offered no factual allegations to render plausible their claim that the enterprise
7  members actually knew of the alleged fraudulent common purpose, or that they "formed" the
8  enterprise to participate in performing "unnecessary property inspections" – much less that they
9  "devised a scheme to defraud borrowers . . . by means of false pretenses." (*Cf.* FAC ¶¶ 46, 97.)
10 Indeed, aside from these conclusory allegations, the FAC is notably lacking in the way of
11 substantive allegations concerning the third-party enterprise members. Instead, the FAC focuses
12 almost exclusively on the Citi defendants' intent, knowledge, and actions. For example, it was
13 Citi that assessed fees for inspections, allegedly concealed the true nature of those fees, and that
14 undertook to implement a computerized automated mortgage loan management system that
15 requested property inspections that were allegedly unnecessary. In contrast, what factual
16 allegations the FAC does offer relating to the non-defendant enterprise members demonstrate at
17 most that Safeguard had service contracts with Citi and performed inspections according to those
18 contracts. Plaintiffs' allegation that Safeguard "conducted the inspections according to policies

---

[5] Because the FAC alleges that the enterprise members associated for a common fraudulent purpose, plaintiffs must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Thus, plaintiffs must allege "the who, what, when, where, and how" of the alleged fraudulent conduct that gives rise to their civil RICO fraud claims, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*). Although plaintiffs have met this standard with respect to the named Citi defendants' fee processing actions (alleging, for example, specifics concerning Citi's computer programming, the standardization of inspections, that no person oversaw the requests for such inspections or reviewed them, and that such charges were identified cryptically on borrowers' billing statements as "Delinquency Expenses"), they have not alleged sufficiently facts supporting the formation or existence of the allegedly fraudulent common purpose with respect to other enterprise members. Indeed, the FAC offers only the limited, conclusory allegation that the enterprise members "devised a scheme to defraud [. . .]" and shared the common purpose to charge borrowers for "unnecessary default-related services."

and procedures developed collaboratively with Citi," does not render plausible plaintiffs' claim that the members of the Citi Enterprise associated for the alleged, and fraudulent, common purpose. (*See* FAC ¶ 102.) Even construing the facts alleged in the light most favorable to plaintiffs, the FAC alleges only that Safeguard acted pursuant to a service contract: Citi's system orders inspections of properties from Safeguard; Safeguard conducts the inspections according to policies and procedures it developed with Citi; Safeguard generates a report for each inspection; Safeguard then generates data for Citi. (FAC ¶¶ 101, 102.) Such allegations do not render plausible plaintiffs' theory that the members of the enterprise "associated together for the common purpose" of executing and charging for "unnecessary" property inspections or that together, the enterprise members "devised a scheme to defraud borrowers." (FAC ¶¶ 45, 97.)

Again, the allegations offered by plaintiffs here stand in stark contrast to the *Bias* case, in which a common purpose was alleged sufficiently. There, the "common purpose" alleged was similarly fraudulent: to "limit[] costs and maximiz[e] profits by fraudulently concealing assessments for unlawfully marked-up fees for default related services on borrowers' accounts." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 941 (N.D. Cal. 2013). But there, plaintiffs alleged that defendant Wells Fargo associated with a member of the enterprise, and provided facts to render plausible its allegation that the enterprise member in fact shared that common, fraudulent purpose. Specifically, Wells Fargo was alleged to have established an "inter-company division" called Premiere Asset Services to "generate revenue and undisclosed profits for Defendants" because "it appear[ed] as though [it] [wa]s an independent company." *Id.* at 924 (citations omitted). Premiere, a member of the enterprise, then allegedly created fictitious invoices to substantiate fees that Wells Fargo relied on to further the scheme. *Id.* at 941. Thus, in *Bias*, the complaint alleged sufficiently that a member of the enterprise shared the stated, and fraudulent, common purpose, and provided factual allegations to render this theory plausible. Indeed, there the Court found that factual allegations established that Premiere "served a critical role" in the allegedly fraudulent scheme, one that was separate and distinct from Premiere's own affairs. *Id.* at

941.[6]

      Here, unlike *Bias*, plaintiffs do not allege facts to support their claim that Safeguard shared Citi's purpose of performing unnecessary property inspections, or that the non-Citi entities have in any way participated in the development of a scheme to achieve this end. As stated above, the FAC alleges merely that Safeguard acted pursuant to their ordinary contractual obligation to perform inspections when Citi sent a request. Accordingly, as the Court noted in its prior Order, plaintiffs FAC remains deficient in terms of factual allegations that show that the non-Citi enterprise members *associated together* with the Citi defendants *for* the alleged common purpose. *Stitt v. Citibank*, 942 F. Supp. 2d 944, 958 (N.D. Cal. 2013).

      Thus, for the reasons stated above, having construed plaintiffs' allegations in the light most favorable to them, the Court finds that plaintiffs have again failed to allege sufficiently that the members of the association-in-fact enterprise shared a common purpose.

### 2. Distinct Enterprise Conduct

      As stated above and in the Court's previous Order, Section 1962(c) requires plaintiffs to allege two distinct entities: a "person" and an "enterprise." *Cedric Kushner Promotions*, 533 U.S. at 161, 166. The Supreme Court noted that this distinctiveness requirement was consistent with a prior holding that liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id*. at 163 (quoting *Reves*, 507 U.S. at 185).

      For the reasons stated above, plaintiffs have failed to allege sufficiently the existence of an association-in-fact enterprise because as the FAC lacks factual allegations that, if true, establish

---

[6] The same distinction applies to the recent decision in *Vega v. Ocwen*, Case No. 14-4408, Dkt. No. 50, in which the district court noted specifically that there, defendants were alleged to have "funneled work" to one of their wholly owned subsidiaries named Altisource (which entity was also a member of the association-in-fact enterprise), and Altisource then ordered the allegedly unnecessary property inspection. The court in *Vega* further noted that certain individuals "still own significant shares of Defendants and Altisource, and that regulators have raised concerns about self-dealing." (Vega Dkt. No. 50 at 11-12.) Thus, the factual allegations underlying the court's finding that Vega had alleged sufficiently a RICO enterprise were more akin to those in *Bias* than those presented here. Indeed, the district court specifically cited to *Bias* in support of its decision not to dismiss Vega's RICO claim. (*Id*.)

1   that the enterprise is comprised of members associated together for a common purpose.  Thus,

2   plaintiffs cannot, as a logical matter, be found to have alleged distinct enterprise conduct.

3         **B.**        **Conspiracy to Violate RICO: 18 U.S.C. Section 1962(d) ("Section 1962(d)")**

4         Under Section 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of

5   the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  "To establish a

6   violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive

7   violation of RICO or that the defendants agreed to commit, or participated in, a violation of two

8   predicate offenses."  *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  The

9   conspiracy defendant "must intend to further an endeavor which, if completed, would satisfy all of

10  the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or

11  facilitating the criminal endeavor."  *Id*. (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)).

12  Moreover, the defendant must also have been "aware of the essential nature and scope of the

13  enterprise and intended to participate in it."  *Id*. (quoting *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th

14  Cir. 1993)).

15        In *Howard*, the Ninth Circuit affirmed the "district court['s holding] that the failure to

16  adequately plead a substantive violation of RICO precludes a claim for conspiracy."  *Id*.; *see*

17  *Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) (affirming dismissal of RICO claims,

18  including conspiracy, where plaintiffs failed to allege, among other things, acts of mail fraud, wire

19  fraud, and pattern of racketeering activity).

20        Accordingly, because plaintiffs have again failed to allege the requisite substantive

21  elements of RICO under Section 1962(c), their claim for conspiracy under Section 1962(d) also

22  fails.

23  **III.**    **CONCLUSION**

24        For the reasons set forth above, plaintiffs have failed to allege an association-in-fact

25  enterprise and defendants' motion to dismiss is **GRANTED**.[7]  At this late juncture, near the close of

---

[7] In light of the Court's dismissal on these grounds, defendants' arguments regarding racketeering activity are moot and the Court declines to address them.  *See also*, *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 958 (N.D. Cal. 2013).

11

discovery, leave to amend is not permitted. Although plaintiffs have had well over a year to engage in discovery intended to uncover facts supporting their RICO theory, the FAC nonetheless remains deficient. Indeed, the FAC includes less in the way of substantive allegations supporting plaintiffs' RICO theory than did the original complaint, as it no longer alleges that defendants have marked up default-related fees.

Accordingly, plaintiffs' RICO claims are **DISMISSED** without leave to amend.

This terminates Docket No. 70.

**IT IS SO ORDERED**.

Date: **January 6, 2015**

  **YVONNE GONZALEZ ROGERS**
  **UNITED STATES DISTRICT COURT JUDGE**