UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GLORIA STITT**, *et al.*, <br><br>     Plaintiffs, <br><br> vs. <br><br> **CITIBANK, NATIONAL ASSOCIATION AND CITIMORTGAGE, INC.**, <br><br>     Defendants. | Case No.: 12-cv-03892- YGR <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Re: Dkt. Nos. 113, 140 |

Before the Court is the motion for class certification filed by plaintiffs Gloria Stitt, Ronald Stitt, Mark Zirlott, and Terri Zirlott (collectively, "Plaintiffs"). (Dkt. No. 113, "Mtn.")[1] Defendants Citibank, National Association and CitiMortgage, Inc. (collectively, "Defendants" or "Citi") oppose. Having carefully considered the papers submitted and the pleadings in this action, oral argument on September 1, 2015, and for the reasons set forth below, the Court hereby **DENIES** Plaintiffs' motion.

**I.    FACTUAL BACKGROUND**

Citi serviced home mortgage loans throughout the proposed class period. In this role, Citi is responsible for providing certain services to protect the mortgage lenders' interest in the property securing the loan. Among these services are property inspections, which the servicer orders to inspect the property that secures a delinquent loan when a borrower goes into default on

---

[1] The Court resolves the three administrative motions to seal documents submitted in connection with the substantive motion via separate order entered this date.

the underlying mortgage. (*See* Dkt. No. 127-68 ¶ 4.) Citi uses an automated software management system, CitiLink, to manage the process of charging borrowers for property inspections. (*Id*. ¶ 7.) CitiLink is generally programmed to order an initial property inspection from its vendor once a borrower is forty-five (45) days delinquent on loan payments and every thirty (30) days thereafter if the borrower remains delinquent. (*Id*. ¶ 8.)

Citi sends delinquent borrowers pre-inspection letters informing them they will be charged for an inspection if their default is not cured. (Dkt. No. 12-9 at 37.) The pre-inspection letters also inform borrowers that the fee would be reflected on their monthly billing statement as a "delinquency expense," and that the inspections would continue to occur monthly as long as the mortgage remained in default. (*Id*.) The monthly mortgage statements further explain that the term "delinquency expense" includes "third-party expenses such as property inspection fees…incurred by [Citi] as a result of default." (*Id*.) Some borrowers, including the Stitts, received itemized breakdowns of charges due, listing charges for "Inspections/Pending Inspections" or "Monthly Inspections." (Dkt. No. 127-16 at 68; Dkt. No. 127-17 at 71.) Citi charged borrowers for only the cost a third party vendor charged Citi for the inspection, with no "mark-up."[2]

Citi was the servicer on the named Plaintiffs' mortgages. Plaintiffs now challenge Citi's practice of using CitiLink, which they allege automatically orders property inspections and charges borrowers for same. Specifically, Plaintiffs allege that Citi's practices are not authorized by Plaintiffs' mortgage agreements. Plaintiffs now seek to recover the property inspection fees they previously paid to Citi under theories of fraud and unjust enrichment.

**II.    PLAINTIFFS' PROPOSED CLASS DEFINITIONS AND CLAIMS**

Plaintiffs move to certify three classes:

**1. Nationwide Unjust Enrichment Class**
All residents of the United States of America who had a loan serviced by CitiMortgage from January 1, 2003 through June 1, 2013, and who paid fees for one or more property inspections.

---

[2] The parties agree that Citi did not assess fees to borrowers for property inspections conducted in the states of West Virginia and Maryland, pursuant to those states' laws.

> **2. New York Fraud Class**
> All residents of New York who had a loan serviced by
> CitiMortgage from January 1, 2003 through June 1, 2013, and who
> paid fees for one or more property inspections.
>
> **3. Alabama Fraud Class**
> All residents of Alabama who had a loan serviced by CitiMortgage
> from January 1, 2003 through June 1, 2013, and who paid fees for
> one or more property inspections.

(Mtn. at 2.)  Plaintiffs seek to certify all classes as damages classes pursuant to Rule 23(b)(3).

### III. DISCUSSION

#### A. Legal Standard

Rule 23, which governs class certification, contains two sets of distinct requirements that Plaintiffs must meet before the Court may certify either class.  First, Plaintiffs must meet all of the requirements under Rule 23(a).  Second, each class must meet at least one of the prongs of Rule 23(b), depending on the nature of the class.

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).  Courts refer to these four requirements as "numerosity, commonality, typicality and adequacy of representation."  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).    In addition to the four requirements set forth in Rule 23(a), most courts have implied an additional threshold requirement: that the members of the class are readily ascertainable.  *See Xavier v. Philip Morris USA, Inc.*, 787 F.Supp.2d 1075, 1089 (N.D.Cal. 2011) ("the party seeking certification must demonstrate that an identifiable and ascertainable class exists"); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666. 672 (N.D.Cal. 2011) ("[w]hile Rule 23(a) is silent as to whether the class must be ascertainable, courts have held that the rule implies this requirement).  If Plaintiffs establish that the threshold requirements of Rule 23(a) are met, Plaintiffs then have the burden to show "through evidentiary proof" that a class is appropriate for certification under one of the provisions in Rule 23(b).  *Comcast Corp. v. Behrend*, 133 S.Ct.

3

1426, 1432 (2013).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)); *see also Mazza*, 666 F.3d at 588. The Court considers the merits to the extent that they overlap with the Rule 23 requirements. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011). The Court must resolve factual disputes to the extent "necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Id.* (emphasis in original). "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" *Aburto v. Verizon Cal., Inc.*, 2012 WL 10381, at *2 (C.D. Cal. Jan. 3, 2012) (quoting *Ellis*, 657 F.3d at 982). Ultimately, the district court must exercise its discretion to determine whether a class should be certified. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

### B. Analysis

With the exception of numerosity, Citi argues that Plaintiffs have failed to meet their burden with respect to all class certification requirements. The Court begins with an analysis of the Rule 23(a) factors. Finding at the outset that Plaintiffs have not met their burden on Rule 23(a)(2)'s commonality requirement, the Court does not proceed further in the analysis.

#### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is undoubtedly met here and Citi does not contend otherwise. Plaintiffs submit that there are more than one million putative class members in the nationwide class. (Pifko Decl., Exh. 5 at 134; *Id*., Exh. 17 at 322-24.) With potentially more than one million class members residing in fifty states, at least as to the nationwide unjust enrichment class, the Court agrees that numerosity is satisfied.

#### 2. Commonality

Rule 23(a)(2) requires that the party seeking certification show "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). To satisfy this requirement, a common question "must be of such a nature that it is capable of class-wide resolution – which means that

4

the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 131 S.Ct. at 2545. The existence of common questions itself will not satisfy the commonality requirement, and instead, "[w]hat matters to class certification …is… the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. at 2551. Under the commonality inquiry, "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Dukes*, 131 S.Ct. at 2556).

Here, Plaintiffs propose only one common question as suitable for determination on a classwide basis for all classes. The question, as framed by Plaintiffs, is whether CitiLink generated unauthorized property inspection fees that were then assessed to borrowers' accounts by not taking individual circumstances of borrowers into account. (Mtn. at 15-17.) This question, Plaintiffs argue, would drive the ultimate resolution of their claims because it would establish liability class-wide. In that regard, Plaintiffs contend that Citi had an automated, uniform practice that applied to every property inspection for which it would charge borrowers throughout the entire class period. Thus, in Plaintiffs' view, the legality of Citi's purportedly uniform practice[3] spanning more than a decade is the central issue in this case.

Plaintiffs' argument has obvious appeal. Should a fact-finder conclude that the manner in which CitiLink ordered and charged borrowers for property inspections was unlawful; the logical conclusion would be that all class members would be entitled to relief. However, this simplistic approach glosses over – indeed arguably ignores – Plaintiffs' claims for relief. Plaintiffs fundamentally fail to illustrate the efficacy of a determination of the impropriety of CitiLink's automated system in the context of their claims.

---

[3] The Court assumes, without deciding, that Plaintiffs fulfilled their threshold burden to establish Citi operated under a common policy applied uniformly to all class members. *C.f.* related case *Ellis, et al. v. J.P. Morgan Chase & Co., et al.*, Case No. 12-3897, December 17, 2015 (finding that plaintiffs failed to establish that defendants applied a property inspection policy uniformly to all class members).

5

Plaintiffs' commonality argument unravels upon an examination of the elements of the remaining claims in this action. To find commonality satisfied, the Court must be convinced that a determination that Citi's challenged practice was unlawful will ultimately advance the litigation on Plaintiffs' proposed class claims: fraud under the laws of New York and Alabama.[4] To maintain a fraud claim under the laws of both states, Plaintiffs must prove: (1) a material misrepresentation or omission of fact, (2) which Defendants knew to be false, (3) made for the purpose of inducing Plaintiffs to rely upon it, (4) justifiable or reasonable reliance, and (5) injury caused by the misrepresentation or omission. *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011); *Mantiply v. Mantiply*, 951 So.2d 638, 653 (Ala. 2006).

Plaintiffs base their fraud claims on Citi's alleged misrepresentation (element one) that property inspection fees were charged in accordance with the borrowers' mortgage agreements, when in fact the charges were neither valid nor due.[5] The inquiry thus becomes how a determination that Citi's *methodology* was unlawful could advance the litigation. Would a finding that Citi's methodology is "actionable" generate a common answer that Citi made a misrepresentation when it implicitly stated that inspection charges were valid? The answer is no.

Under Plaintiffs' theory, a given property inspection charge must have been invalid under the terms of a borrower's particular mortgage agreement for Citi to have made a

---

[4] Plaintiffs also move to certify a nationwide unjust enrichment class. However, in *Mazza v. American Honda Motor Co., Inc.*, the Ninth Circuit unequivocally held that the "elements necessary to establish a claim for unjust enrichment…vary materially from state to state." 666 F.3d 581, 591 (9th Cir. 2012). No court in this Circuit has certified a nationwide unjust enrichment class since *Mazza* and Plaintiffs have failed to show how this Court could manage a nationwide class where fifty varying states' laws would apply, as required under Rule 23(b)(3). For these reasons, and those set forth in more detail in related case *Bias, et al. v. Wells Fargo & Co., et al.*, Case No. 12-cv-664, December 17, 2015, the Court finds that certification of a nationwide unjust enrichment class is improper under Rule 23. Because the nationwide unjust enrichment class is otherwise not suitable for certification, the Court limits its commonality analysis to Plaintiffs' two remaining proposed classes: the New York Fraud Class and Alabama Fraud Class.

[5] In addition, Plaintiffs argue that Citi uniformly concealed the property inspection fees by using the allegedly inaccurate description of "delinquency expenses." This argument is not supported by the record. In particular, Plaintiffs do not address how this "grouping" could amount to a misrepresentation in light of Citi's evidence that the same mortgage statements defined "delinquency expenses" to include property inspection fees. (*See* Dkt. No. 127-9 at 141.) Accordingly, the Court does not consider this unsubstantiated theory for purposes of class certification.

6

misrepresentation. The terms of the mortgage itself govern whether a property inspection fee was validly charged. And, Plaintiffs' expert Jacqui Peace agrees that inspection fees are authorized by Plaintiffs' mortgages under certain circumstances. (*See* Dkt. No. 127-55, "Peace Dep.," at Kane000175-76.) Ms. Peace further agrees that individual considerations must be assessed to determine whether a property inspection was authorized. (*Id*. at Kane000169.) More specifically, individual circumstances must be considered to determine whether a property inspection was "reasonable or appropriate" as prescribed by the Stitts' mortgage, or "necessary" as prescribed by the Zirlotts' mortgage. (*Id*.; *see* Dkt. No. 127-3; Dkt. No. 127-18.)

Thus, given the nature of Plaintiffs' theory, the Court finds that the focus of this case hinges on a contract dispute. Citi's liability rises or falls on whether a fact-finder determines that a property inspection fee was authorized by the borrower's mortgage agreement. As Plaintiffs insist, "it is the language of Plaintiffs' [sic] and class members' mortgages…which is relevant to Plaintiffs' claims." (Dkt. No. 137 at 11:18-19.) Reviewing only the named Plaintiffs' mortgage agreements shows that class members' agreements had "distinct terms" such that common proof could not be used to determine the validity of property inspection fees. *Berger v. Home Depot USA*, 741 F.3d 1061, 1070 (9th Cir. 2014) (finding that "distinct terms" in plaintiffs' contracts made determination of whether a material misrepresentation was made not suitable for classwide determination). Some mortgages impose a standard of reasonableness or appropriateness, while others impose a standard of necessity before allowing fees such as property inspections. These standards are not interchangeable. "The term 'reasonable' is quite broad" while "[i]f a particular act is only authorized when necessary, the prospective actor is held to quite a demanding standard before it can act." *Vega v. Ocwen Financial Corp.*, 2015 WL 1383241, at *3, *5 (C.D.Cal. March 24, 2015); *see also Gustafson v. BAC Home Loans Servicing*, 294 F.R.D. 529, 542 (C.D.Cal. 2013) (declining plaintiffs' unsubstantiated invitation to construe "reasonable or appropriate" and "necessary" as equivalent mortgage terms). Plaintiffs' theory would therefore require a fact-finder to evaluate Citi's behavior based on at least two separate standards. *Gustafson*, 294 F.R.D. at 542 (finding commonality and predominance not met where approximately half of class members' mortgage agreements allowed "reasonable or appropriate action" and the other half empowered

the servicer to do only what was "necessary"). This alone defeats commonality.[6] *Id*.

Plaintiffs' theory that the manner in which Citi ordered and charged property inspection fees was unlawful and *per se* invalid is not tenable. To show a misrepresentation, Plaintiffs would have to establish that *the circumstances in fact did not warrant* a property inspection or charge. Otherwise, Citi's representation in pre-inspection letters and mortgage statements that a charge was valid is not a *mis*representation. Each class member would still have to prove that a given charge was not valid regardless of whether Citi's automatic methodology is lawful. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1264 (11th Cir. 2004) (proving that defendant had a "general conspiracy or policy of breaching" a contract would not obviate the need for each class member to show that there was a breach with respect to their claim); *Benner*, 917 F.Supp.2d at 352, 355 ("A Court must examine the facts of each case" to determine whether a property inspection may be ordered "at the borrower's expense") (internal quotations omitted). Thus, the issue of whether Citi failed to pre-determine whether the circumstances warranted an inspection (or multiple inspections) is not dispositive.

In sum, the validity of a property inspection charge is an individual inquiry. Plaintiffs' attempt to characterize their claims as challenges to CitiLink's automated programming does nothing to advance the litigation. *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) (reversing district court's certification order where defendant's policy would do "nothing to facilitate common proof on otherwise individualized issues"); *see also St. Louis Chiropractic v. Federal Insurance Co.*, 2008 WL 4056225 (D.N.J. Aug. 26, 2008) (dismissing class claims because determining the reasonableness of defendants' actions required

---

[6] Citi further argues that there are material differences in the terms of the agreements insofar as some mortgages include a paragraph 14 authorizing a servicer to "charge [borrowers] for services performed in connection with [their] default, for the purpose of protecting Lender's interest in the Property and rights under the Security Instrument, including…property inspection…fees." (Dkt. No. 127-3 at 7.) In Citi's view, paragraph 14 specifically authorizes property inspection fees and controls over the more general provision allowing them only where they are "reasonable or appropriate." At least two courts have agreed with Citi. First, In *Vega*, *supra*, the court concluded that mortgages including this paragraph 14 make property inspection fees reasonable in all circumstances. 2015 WL 1383241, at *4. Second, in *Benner v. Bank of America, N.A.*, the district court noted that paragraph 14 permitted defendants to charge plaintiffs for property inspections, without any reasonableness or appropriateness requirement. 917 F.Supp.2d 338, 353 (E.D.Pa. 2013.)

8

individualized evaluation), *aff'd*, 342 F.App'x 809 (3d Cir. 2009)  Absent a link between Plaintiffs' common question *vis-à-vis* Citi's methodology on the one hand, and Plaintiffs' theory *vis-à-vis* a fraudulent misrepresentation on the other, Plaintiffs' motion fails.

The cases on which Plaintiffs rely are inapposite.  Plaintiffs principally rely on *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332 (S.D. Iowa 2013).  In *Huyer*, the district court certified a damages class asserting claims based on conduct very similar to the conduct at issue here: Wells Fargo's use of an automated system to charge borrowers for property inspections without particularized determinations that inspections were necessary.  Importantly, however, the *Huyer* plaintiffs brought claims alleging violations of RICO and California's unfair competition law, not common law fraud.  With respect to the RICO claim, policies demonstrating a pattern of racketeering activities "constitute essential elements" of the claim.  *Id*. at 348 (quoting *Klay*, 382 F.3d at 1257).  By contrast, here, Citi's methodology could at most constitute circumstantial proof of wrongdoing.  It could not establish any element of Plaintiffs' claims.  In fact, Plaintiffs' claims are more akin to the breach of contract claim that the *Huyer* court conceded would likely be "impossible" to certify due to individualized issues.  *Id*.

Plaintiffs also cite *Williams v. Wells Fargo Bank* for the proposition that their claims satisfy the commonality inquiry.  280 F.R.D. 665, 672 (S.D.Fla. 2012).  That case involved the allegation that Wells Fargo used illegal kickbacks in conspiring with an insurer to inflate force-placed insurance premiums for borrowers.  *Id*. at 669.  Based on that allegation, the district court found certification of a class to bring unjust enrichment claims appropriate because its truth or falsity would answer the "ultimate question of liability" for every class member in one stroke.  *Id*. at 672.  Unlike the unjust enrichment claim in *Williams*, a finding that Citi's policy was unlawful would not prove that all members of the proposed class were exposed to a misrepresentation.[7] *Williams* does not persuade.

///

---

[7] The Court makes no finding with respect to whether Plaintiffs' proposed common question would satisfy commonality under Rule 23(a)(2) in the context of their unjust enrichment claim.

9

For the foregoing reasons, the Court finds that Plaintiffs have not established a common question "central to the validity" of their claims. Plaintiffs' motion is **DENIED**.

### IV. PLAINTIFFS' EVIDENTIARY OBJECTIONS

Plaintiffs filed a document entitled "Plaintiffs' Evidentiary Objections to Evidence Submitted with Opposition to Class Certification," appended to their twenty-page reply. (Dkt. No. 137-1.) Plaintiffs' objections were not filed in compliance with the Local Rules of this District. Pursuant to Local Rule 7-3(c), "[a]ny evidentiary and procedural objections to the opposition must be contained in the reply brief or memorandum." Plaintiffs filed their objections as a separate document outside of their reply brief. On that basis, the objections are **DENIED.** Accordingly, Defendants' motion for leave to respond to Plaintiffs' evidentiary objections (Dkt. No. 140) is **DENIED AS MOOT**.

### V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion to certify and **DENIES** Plaintiffs' evidentiary objections.

This Order terminates Docket Numbers 113, 140.

**IT IS SO ORDERED**.

Dated: December 17, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**