Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Michael Isaac Miller (SBN 266459)
imiller@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

Attorneys for Plaintiffs
GLORIA STITT, RONALD STITT, MARK
ZIRLOTT, and TERRI LOUISE ZIRLOTT,
individually, and on behalf of other members
of the public similarly situated

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA STITT, RONALD STITT, MARK ZIRLOTT, and TERRI LOUISE ZIRLOTT, individually, and on behalf of other members of the public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITIBANK, N.A., a national association, and CITIMORTGAGE, INC., a New York corporation,<br><br>Defendants. | Case Number: 4:12-cv-03892-YGR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:           June 7, 2016<br>Time:          2:00 PM<br>Location:     Oakland Division<br>                    1301 Clay Street<br>Judge:         Hon. Yvonne Gonzalez Rogers<br><br>Trial Date:   None Set |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION ...................................................................................................... 1

II.  DEFENDANTS CANNOT MEET THEIR BURDEN UNDER RULE 56(c) ......... 2

III.  DEFENDANTS FAIL TO PRESENT ANY BASIS TO GRANT
     SUMMARY JUDGMENT ON PLAINTIFFS' FRAUD CLAIMS .......................... 3

     A.  Plaintiffs' Fraud Claims Are Based on Affirmative Misrepresentations
         Concerning Defendants' Authority to Assess the Challenged Property
         Inspection Fees, Not a Mere Breach of Contract ............................................ 3

     B.  Defendants Knowingly, and Intentionally, Exceeded Their Authority
         in Assessing Plaintiffs the Challenged Fees .................................................... 6

     C.  Property Inspection Fees Are not "Reasonable or Appropriate" or
         "Necessary" as a Matter of Law under Plaintiffs' Mortgage Contracts ......... 7

     D.  Plaintiffs Are *Not* Attempting to Improperly Enforce the Fannie Mae
         Servicing Guides .............................................................................................. 10

     E.  Defendants' "Manner Theory" Argument Misses the Mark ........................... 12

     F.  Plaintiffs Relied On Defendants' Misrepresentations that the
         Challenged Property Inspection Fees were "Valid" Charges ........................ 13

IV.  SUMMARY JUDGMENT IS NOT WARRANTED AS TO PLAINTIFFS'
     UNJUST ENRICHMENT CLAIMS ........................................................................ 15

V.  DEFENDANTS WAIVED THEIR "NOTICE-AND-CURE" ARGUMENT ........ 17

VI.  DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENT FAILS ............. 18

VII.  THERE IS SUFFICIENT EVIDENCE TO RAISE A TRIABLE ISSUE AS
      TO WHETHER CITIBANK CAN BE HELD LIABLE UNDER AN
      AGENCY THEORY ................................................................................................ 19

VIII.  CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

CASE                                                                    PAGE(S)

*American Movie Classics v. Rainbow Media Holdings*,
  508 Fed. Appx. 826 (10th Cir. 2013)................................................................ 17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).............................................................................. 3, 20

*Beneficial Standard Life Ins. Co. v. Madariaga*,
  851 F.2d 271 (9th Cir.1988) ...................................................................... 19

*Bennett v. Visa U.S.A. Inc.*,
  198 S.W.3d 747 (Tenn. Ct. App. 2006)...................................................... 16, 17

*Bildstein v. MasterCard Int'l, Inc.*,
  2005 WL 1324972 (S.D.N.Y. June 6, 2005) ............................................... 15, 16

*Celotex Corp v. Catrett*,
  477 U.S. 317 (1986)................................................................................ 2, 3

*Cirino v. Bank of America*,
  Case No. 2:13-cv-08829-PSG-MRW, Dkt. 41 (C.D. Cal. Oct. 1, 2014) ........... 9, 10, 11

*Corva v. United Services Automobile Assoc.*,
  108 A.D.2d 631 (N.Y. 1985) ....................................................................... 14

*DDJ Management, LLC v. Rhone Group LLC*,
  15 N.Y.3d 147 (2010) ............................................................................... 14

*Ellis v. J.P. Morgan Chase & Co.*,
  950 F. Supp. 2d 1062 (N.D. Cal. 2013) ......................................................... 15

*Ellis v. J.P. Morgan Chase & Co.*,
  Case No. 4:12-cv-3897-YGR, Dkt. 100, Dkt. 101 (N.D. Cal. July 30,
  2014) .................................................................................................. 10

*FRA S. p. A. v. Surg-O-Flex of America, Inc.*,
  415 F. Supp. 421 (S.D.N.Y. 1976) ............................................................... 18

*Marketplace LaGuardia LP v. Harkey Enterprises*,
  2008 WL 905188 (E.D.N.Y. Mar. 31, 2008)................................................... 16

*McConico v. Corley, Moncus and Bynum, P.C.,*
   567 So.2d 863 (Ala. 1990)...................................................................... 14, 21

*Morrison v. Mahoney,*
   399 F.3d 1042 (9th Cir. 2005) ........................................................................ 18

*Seiden Assocs., Inc. v. ANC Holdings, Inc.,*
   754 F. Supp. 37 (S.D.N.Y. 1991) .................................................................... 16

*Sklodowski v. Countrywide Home Loans, Inc.,*
   358 Ill. App. 3d 696 (2005) ............................................................................ 11

*Stegall v. Citadel Broad. Co.,*
   350 F.3d 1061 (9th Cir. 2003) .......................................................................... 3

*Stitt v. Citibank,*
   Case No. 4:12-cv-03892, Dkt. 21 (N.D. Cal. Apr. 25, 2013)........................... 15

*Stitt v. Citibank, N.A.,*
   942 F. Supp. 2d 944 (N.D. Cal. 2013) .............................................................. 8

*Stitt v. Citibank, N.A.,*
   Case No. 4:12-cv-3892-YGR, Dkt. 70 (N.D. Cal. July 18, 2014) ................... 10

*Twenty First Century L.P.I. v. LaBianca,*
   19 F.Supp.2d 35 (E.D.N.Y. 1998) ............................................................. 14, 15

*Vega v. Ocwen Fin. Corp.,*
   2015 WL 1383241 (C.D. Cal. Mar. 24, 2015)................................... 1, 5, 8, 10

*Vega v. Ocwen,*
   No. 15-55885 (9th Cir. June 10, 2015)............................................................. 5

*Walker v. Countrywide Home Loans, Inc.,*
   98 Cal. App. 4th 1158 (2002) ........................................................... 1, 8, 9, 10

*Wheeler v. George,*
   39 So. 3d 1061 (Ala. 2009)............................................................................. 19

*White v. Microsoft Corp.,*
   454 F. Supp. 2d (S.D. Ala. 2006) ................................................................... 16

*Young v. Wells Fargo,*
   671 F. Supp. 2d 1006 (S.D. Iowa 2009) ................................................... 4, 10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Yumul v. Smart Balance, Inc.*,
    2011 WL 1045555 (C.D. Cal. Mar. 14, 2011) ................................................................. 18

**Other Authorities**

5 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* §
    1278 (3d ed. 2004) ...................................................................................................... 18

Federal Rule of Civil Procedure 8 .................................................................................... 18

Fedederal Rule of Civil Procedure 12 ............................................................................... 18

# I.   INTRODUCTION

Defendants' motion for summary judgment fails to meet the high burden required under Rule 56.  As a preliminary matter, Defendants do not, and cannot, establish that the claims asserted by Plaintiffs are barred as a matter of law, and that each of the facts they claim are material, as contained in their Separate Statement, are undisputed.  Plaintiffs also raise additional disputed material facts that compel the denial of Defendants' motion. Defendants' legal contentions simply rehash arguments that have already been considered and rejected by this Court.

With respect to the facts, critically, ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████   These undisputed facts exemplify the fraudulent nature of Defendants' conduct. Nevertheless, relying on a single district court opinion, *Vega v. Ocwen*, a case which is fully briefed on appeal before the Ninth Circuit, Defendants' argue that this entire action is a "basic contract dispute."  But, properly construed, Plaintiffs' claims that Defendants affirmatively misrepresented their authority to assess and collect the challenged fees go well beyond a mere breach of contract claim.  As such, Defendants' efforts to repackage this case to fit their erroneous legal theory must be rejected.

Similarly, this Court should reject Defendants' argument that Plaintiffs' property inspection fees were *per se* reasonable under their mortgages.  Once again, Defendants' argument is premised, improperly, on *Vega*.  Additionally, as in their original motion to dismiss, Defendants rely on *Walker v. Countrywide Home Loans, Inc.* The weight of authority, however, establishes that Defendants are misreading, and misapplying, *Walker*. Moreover, the relevant Fannie Mae servicing guidelines, which provide Fannie Mae's interpretation of the Fannie Mae/Freddie Mac uniform mortgage contracts at issue, clearly establish that property inspection fees are not, nor could they be, *per se* reasonable or appropriate.  Therefore, Defendants' reasonableness argument falls flat.

Defendants' contention that Plaintiffs "cannot show justifiable or reasonable

1   reliance" fares no better. ████████████████████████

2   ████████████████████████████████████████████████████

3   ████████████████████████████████████   Nothing further is required to

4   meet the reliance element under either New York or Alabama law.  As such, Defendants

5   cannot establish that summary judgment is warranted as to Plaintiffs' fraud claims.

6       Nor can Defendants colorably argue that Plaintiffs' unjust enrichment claims fail as

7   a matter of law.  Defendants first contend that Plaintiffs' claims are barred by their Fannie

8   Mae/Freddie Mac uniform mortgage contracts.  In denying Defendants' motion to dismiss

9   at the outset of this case, however, the Court already rejected that argument, and it should

10  do the same here.  Next, Defendants raise notice and statute of limitations arguments,

11  which have both been waived, and, even if not, are entirely unpersuasive.  These

12  arguments do not, and cannot, satisfy Defendants' heavy burden on summary judgment.

13      Finally, Defendants assert that there is "no evidence" of Citibank's control over

14  CitiMortgage's day-to-day servicing operations, and, therefore, Citibank cannot be held

15  liable under an agency theory.  However, contrary to Defendants' motion, the 2011 OCC

16  Consent Order does set forth evidence which, at a minimum, raises a triable issue of fact

17  as to whether Citibank exerted the requisite control.  As such, Defendants' motion for

18  summary judgment as to Citibank's liability necessarily fails.

19      In sum, Defendants' motion fails to provide a single, valid basis to grant summary

20  judgment, in whole or in part, on Plaintiffs' fraud and unjust enrichment claims.

21  Accordingly, this Court should deny the motion, and allow the parties to proceed to trial.

22  **II.   DEFENDANTS CANNOT MEET THEIR BURDEN UNDER RULE 56(c)**

23      As the moving party, Defendants bear the burden of "demonstrat[ing] the absence

24  of a genuine issue of material fact."  *See Celotex Corp v. Catrett*, 477 U.S. 317, 323-24

25  (1986).  Under Rule 56(c),[1] Defendants can only satisfy their burden by "'showing' -- that

26  is, pointing out to the district court -- that there is an absence of evidence to support the

27

28  [1] The Rules refers to the Federal Rules of Civil Procedure, unless otherwise noted.

nonmoving party's case." *Id.* at 325.  Defendants have not done so.  If, and only if, Defendants meet their initial burden, Rule 56(e) requires Plaintiffs, the nonmoving parties, to "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *See id.* at 324.  A genuine dispute as to a material fact exists "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

To this end, "'the evidence of the [Plaintiffs, the nonmoving] part[ies] is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in the light most favorable to'" the nonmoving party.  *Stegall v. Citadel Broad. Co*., 350 F.3d 1061, 1065 (9th Cir. 2003) (quoting *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991)).  Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## III. DEFENDANTS FAIL TO PRESENT ANY BASIS TO GRANT SUMMARY JUDGMENT ON PLAINTIFFS' FRAUD CLAIMS

### A. Plaintiffs' Fraud Claims Are Based on Affirmative Misrepresentations Concerning Defendants' Authority to Assess the Challenged Property Inspection Fees, Not a Mere Breach of Contract

As alleged in the First Amended Complaint ("FAC"), and confirmed in Defendants' motion, Defendants' right to charge Plaintiffs for property inspections is no greater than the authority that has been given to Defendants by the investors who own Plaintiffs' loans and the terms of the Fannie Mae/Freddie Mac uniform mortgage contracts between Plaintiffs and the investors.  (*See* FAC ¶¶ 43-44; MSJ at 4, 6.)  To this end, Section 203.04 of the Fannie Mae servicing guidelines, which provides Fannie Mae's interpretation of the Fannie Mae/Freddie Mac uniform mortgage contracts at issue in this case, unambiguously explain that:

> ***fees may be charged on a repetitive basis only when*** required or permitted by Fannie Mae's Guides or otherwise ***clearly supported by the circumstances relating to a particular loan*** (e.g., charging a delinquent borrower's account for monthly property inspections generally would not be a permissible

practice unless the servicer determines that the circumstances warrant multiple inspections).

(Declaration of Mark Pifko in Support of Plaintiffs' Opposition to Motion for Summary Judgment ("Pifko Decl.") at ¶ 4, Ex. 3 at PP. 63-64.)[2]  This guideline, read in conjunction with the Fannie Mae/Freddie Mac uniform mortgage contracts at issue (as intended by Fannie Mae), establishes that the assessment of property inspection fees without first considering the circumstances of the particular loan is neither "reasonable" nor "appropriate," much less "necessary," to protect the lender's interest in the property.  (*Id.* at ¶ 2, Ex. 1 at PP. 13-15; *id.* at ¶ 3, Ex. 2 at PP. 43-44, 48-49.)

Despite these clear instructions, Defendants concede that it is their practice to "order[] an initial inspection about 45 days after the borrower defaults," "continue[] to order inspections at 30-day intervals" *based solely on the borrower's delinquency*, and simply pass along the cost of the inspection to the borrower "without markup."  (MSJ at 4.)  Defendants further concede that they followed this general practice when Plaintiffs defaulted (*id.* at 4-8.), and make no attempt to demonstrate that they considered whether the repeated, monthly inspections of Plaintiffs' properties were "reasonable or appropriate" or "necessary," prior to demanding payment of fees for such inspections in mortgage statements and default letters.

It is this improper assessment of fees that forms the basis of Plaintiffs' fraud claims.[3]  *See Young v. Wells Fargo*, 671 F. Supp. 2d 1006, 1034-35 (S.D. Iowa 2009) (in similar action, the court rejected Wells Fargo's argument that plaintiffs' claims were "a billing dispute mispleaded as fraud claims," explaining that, although "the basis of [p]laintiffs' relationship to Wells Fargo was established by contract, [p]laintiffs have alleged Wells Fargo's practices constitute a systematic scheme to charge excessive fees").  Therefore, properly construed, Plaintiffs' theory is not simply a "repackaged breach-of-contract" claim, as Defendants erroneously suggest.  (*See*, *e.g.*, MSJ at 11.)

---

[2] All emphasis added, unless otherwise noted.

[3] Heeding this Court's ruling on Plaintiffs' motion for class certification, Plaintiffs are no longer pursuing fraud claims based on a concealment theory.

1    Nevertheless, relying exclusively on *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241

2   (C.D. Cal. Mar. 24, 2015), Defendants contend that Plaintiffs "entire grievance" amounts

3   to a "basic contract dispute."  (MSJ at 12.)  Defendants' reliance on *Vega*, however, is

4   misplaced and arguably misleading to the Court.  Critically, Citi fails to inform the Court

5   that *Vega* is pending on appeal, and, therefore, is no longer good law.  *See Vega v. Ocwen*,

6   No. 15-55885 (9th Cir. June 10, 2015).  For this reason alone, Defendants' breach of

7   contract argument should be rejected.

8    Additionally, this argument should be rejected, because Plaintiffs' experiences

9   demonstrate Defendants' unlawful conduct goes well beyond a mere breach of a

10  contractual obligation. ████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████

15  ██████████████████████████████ Not surprisingly, this fact is not addressed,

16  or even referenced, in Defendants' motion.  (*See*, *e.g.*, MSJ at 4-6, 13.) ██████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████████

20  █████████████████████████████████ If Defendants had given any

21  consideration, whatsoever, to whether the inspections were "reasonable or appropriate" to

22  protect the lender's interest, then certainly they would not have assessed the Stitts any of

23  the challenged fees.

24          ████████████████████████████████████████████

25  ████████████████████████████████████████████

26  ████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  █████████████████████████████████████████ These

significant discrepancies, which, again, Defendants do not even attempt to address in their motion (*see, e.g.*, MSJ at 6-8,13), ███████████████████████████████████ ████████████████████████ Either way, the inspections indisputably were not "necessary" to protect the lender's interest in the property.  Therefore, as with the fees assessed to the Stitts, Defendants' assessment of unauthorized property inspection fees on the Zirlotts' monthly mortgage statements constituted a systematic course of fraudulent conduct.[4]

### B.   Defendants Knowingly, and Intentionally, Exceeded Their Authority in Assessing Plaintiffs the Challenged Fees

Defendants contend that Plaintiffs' fraud claims fail, because there is purportedly "no evidence" Defendants "acted with intent to defraud."  (MSJ at 13.)  However, discovery in this case confirms that, in fact, Defendants knew their property inspection charging practices were unlawful.



---

[4] Contrary to Defendants' motion, Plaintiffs' fraud claims are based on misrepresentations of fact (i.e. that the challenged property inspection fees were authorized under the Fannie Mae/Freddie Mac uniform mortgage contracts at issue).  As such, Defendants' misrepresentation of law argument also fails.  (MSJ at 12.)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



This evidence shocks the conscience.  It demonstrates that, at the senior level of Defendants' organization, executives were skirting the law for profit, and to the financial detriment of homeowners.  Given this undisputed evidence, Defendants cannot seriously contend that proof of intent to defraud is lacking.  Therefore, Defendants argument should be rejected.

    **C.**    **Property Inspection Fees Are not "Reasonable or Appropriate" or "Necessary" as a Matter of Law under Plaintiffs' Mortgage Contracts**

Defendants' argument that Stitts' property inspection fees were *per se* "reasonable"

1   is equally meritless.  (MSJ at 13.)  As a threshold matter, ███████████████

2   ███████████████████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████████

4   ███████████████████████████████████████████████

5   ███████████████████████████████████

6   Accordingly, contrary to Defendant's motion, Paragraph 14 does not "control[] over"

7   Paragraph 9's requirement that that property inspection fees be "reasonable or

8   appropriate."  (MSJ at 13.)

9           In any event, a fair reading of Paragraph 14 belies the notion that property

10   inspection fees are *per se* reasonable.  In particular, in addition to generally authorizing

11   charges for property inspection and valuation fees, that paragraph also includes an

12   authorization to charge for "attorney fees."  Under any reasonable interpretation of that

13   paragraph, it cannot be read to mean that the charging of attorney fees escapes the

14   scrutiny of a reasonableness test.  However, to accept Defendants' interpretation of that

15   paragraph would require the Court to also find *as a matter of law* Defendants may charge

16   borrowers for attorney fees regardless of whether such fees were reasonable either in

17   amount or otherwise.  That is not the law, and this example demonstrates that property

18   inspections are not *per* se reasonable acts as Defendants would have this Court believe.

19           Moreover, Defendants' only support for its argument that "a property inspection

20   *must* be a reasonable act" under the Stitts' mortgage is *Vega*.  (*Id.*)  Again, *Vega* is no

21   longer good law, and, therefore, fails to lend any support to Defendants' argument.

22           Defendants' argument that the Zirlotts' property inspection fees were proper under

23   *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158 (2002), (MSJ at 13), is

24   similarly unavailing.  In fact, this exact argument was previously rejected by the Court.

25   *See Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 953 (N.D. Cal. 2013) (rejecting argument

26   that, under *Walker*, Citibank's practice of assessing borrowers fees for monthly,

27   indiscriminately ordered property inspections was not "improper or illegal," and, thus,

28   that the complaint "fails to allege any wrongdoing").

Defendants do not, and cannot, present any basis to modify this Court's prior ruling concerning the application of *Walker*.  In *Walker*, the only issue presented to the California Courts of Appeal was whether or not it is *ever* appropriate for a loan servicer to charge a delinquent borrower a property inspection fee.  *See, e.g.*, *Walker*, 98 Cal. App. 4th at 1164-78.  Indeed, the *Walker* court relied on the fact that, contrary to here, the record suggested that Countrywide's property inspection practices were in compliance with the Fannie Mae guidelines, and it was on that basis that the *Walker* court held that Countrywide's practices were permissible.  *Id*. at 1176.

Here, on the other hand, Plaintiffs' claims concern Defendants' practice of assessing property inspection fees, without considering the circumstances of a particular loan (as the Fannie Mae Guidelines require), and then demanding payment under the guise that such fees are authorized by Plaintiffs' mortgage contracts.  This practice, which is expressly prohibited by the Fannie Mae uniform mortgage contracts and Section 203.04 of the Fannie Mae servicing guidelines, was not at issue in *Walker*.  ***In fact, Section 203.04 of Fannie Mae guidelines was not even implemented until November 1, 2004, two years after the Walker opinion was published.***  Had the *Walker* court been presented with the factual circumstances and Fannie Mae guidelines at issue here, the outcome of *Walker* would have been different.

Notably, ***no other court*** addressing allegations that a loan servicer acted unlawfully by indiscriminately assessing borrowers property inspection fees has ever held that *Walker* is dispositive, as Defendants suggest.  *See Cirino v. Bank of America*, Case No. 2:13-cv-08829-PSG-MRW, Dkt. 41 at 10-11 (C.D. Cal. Oct. 1, 2014) ("Defendants aver that their property inspection practices have been endorsed by the California Court of Appeal in *Walker*. . . . Defendants are over-reading the holding of *Walker*. . . . [N]othing in the *Walker* opinion suggests that the *Walker* plaintiffs raised the argument Plaintiff is advancing here -- that Defendants' automated practices are fraudulent and unfair, because Defendants order property inspections without regard to whether those inspections are reasonable or necessary. As a result, the *Walker* court did not reach that issue.") (internal

citations omitted); *Young*, 671 F. Supp. 2d at 1024-25 ("[U]nlike in *Walker*, [p]laintiffs do not challenge the imposition of property inspection fees in general, but rather, [p]laintiffs assert that the manner in which Wells Fargo charged the property inspection fees is unreasonable. . . . The Court concludes on the record before it that Plaintiffs' UCL claim [is] not barred by *Walker* and will not be dismissed on this ground.")

As in *Cirino* and *Young*, this Court should decline Defendants' invitation to over-read, and misapply, the holding in *Walker*.

### D.   Plaintiffs Are *Not* Attempting to Improperly Enforce the Fannie Mae Servicing Guides

Plaintiffs are not, as Defendants suggest, seeking to "enforce" the Fannie Mae servicing guidelines via their fraud claims.  (MSJ at 14-15 (relying on *Vega*).)  Rather, the servicing guidelines are referenced in the FAC because they set forth Fannie Mae's intended interpretation of the governing provisions of the Fannie Mae/Freddie Mac uniform mortgage contract, in particular, the provisions concerning the authority of the noteholder (and, in turn, the loan servicer) to conduct and assess fees for property inspections and they limit the authority Defendants have as loan servicers to charge borrowers for multiple property inspections.  (*See* FAC ¶¶ 3, 42 – 45.)

Contrary to the position Defendants take in their motion, there is ample support for the proposition that Fannie Mae's servicing guidelines can be used to determine whether the challenged property inspection fees are unauthorized and, therefore, fraudulent.  In fact, earlier in this case, Defendants themselves relied on the Fannie Mae servicing guidelines as the intended interpretation of the Fannie Mae/Freddie Mac uniform mortgage contract at issue here.  *See, e.g.*, *Stitt v. Citibank, N.A.*, Case No. 4:12-cv-3892-YGR, Dkt. 70 at 12-14, Exs. B, C (N.D. Cal. July 18, 2014) (relying on Fannie Mae Servicing Guide §§ 202.04, 203.04 , 303-4, 303-5 in support of motion to dismiss); *Ellis v. J.P. Morgan Chase & Co.*, Case No. 4:12-cv-3897-YGR, Dkt. 100 at 10-11 n. 5, Dkt. 101 at Ex. 5 (N.D. Cal. July 30, 2014) (also relying on the Fannie Mae servicing guidelines as the intended interpretation of the same Fannie Mae/Freddie Mac uniform

mortgage contract at issue here); *see also Cirino*, Case No. 2:13-cv-08829-PSG-MRW, Dkt. 41 at 9-10 (granting defendant's request for judicial notice of excerpts of the Fannie Mae servicing guidelines cited in support of Bank of America's argument that fees for property inspections ordered indiscriminately, by means of Bank of America's automated system, are "reasonable or appropriate" under the Fannie Mae/Freddie Mac uniform mortgage contract).

Defendants, Chase, and Bank of America are not alone in asserting that the Fannie Mae servicing guidelines are highly probative of the intended interpretation of the Fannie Mae/Freddie Mac uniform mortgage contract.  In *Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696 (2005), Countrywide Home Loans, Inc. ("Countrywide") attached the Fannie Mae servicing guidelines in support of its motion for summary judgment, which contended that its policy of refunding escrow account balances fourteen days after payoff of a loan complied with the requirement in the Fannie Mae uniform mortgage contract to "promptly refund" any such money upon repayment.  *Id.* at 698-99. Agreeing with Countrywide, the *Sklodowski* court held that the Fannie Mae Servicing Guide provided the intended interpretation of the phrase "promptly refund" in the Fannie Mae/Freddie Mac uniform mortgage contract:

> [The Fannie Mae Servicing] guidelines interpret Fannie Mae's mortgage documents and advise the lenders, including Countrywide, to return escrow funds within 30 days. These guidelines concern the exact issue in this case, when a lender must promptly refund escrow monies, and interpret the same mortgage contract at issue here. Therefore, although these guidelines are not binding on this court, we find them ***particularly instructive in our interpretation of a term in a Fannie Mae mortgage contract***.

*Id.* at 701-02.

Here, as in *Sklowdowski*, the Fannie Mae servicing guidelines are "particularly instructive" of the intended interpretation of the requirement in the Fannie Mae/Freddie Mac uniform mortgage contract that property inspection fees be "reasonable or appropriate" or necessary.  As set forth above, Section 203.04 of the Fannie Mae servicing

guidelines, read in conjunction with the Fannie Mae/Freddie Mac uniform mortgage contracts (as intended by Fannie Mae), establishes that the assessment of property inspection fees without consideration for the circumstances of the particular loan is neither "reasonable" nor "appropriate," and, therefore, could never be "necessary."  (Pifko Decl. ¶ 2, Ex. 1 at PP. 13-15; *id.* ¶ 3, Ex. 2 at PP. 43-44, 48-49.)  Therefore, by ignoring these critical investor guidelines and provisions of the Fannie Mae/Freddie Mac uniform mortgage contracts, which set the standard of conduct to which Defendants are required to comply, Defendants exceeded their authority when they charged borrowers fees for property inspections, without first considering whether multiple inspections were warranted under the circumstances.

### E.    Defendants' "Manner Theory" Argument Misses the Mark

Contrary to Defendants' motion, Plaintiffs have never contended that Defendants' "use of CitiLink" is, in and of itself, "not authorized."  (MSJ at 15.)  Rather, Plaintiffs contend that Defendants exceeded their authority by demanding payment of fees whenever a property inspection was ordered via CitiLink and purportedly completed – or, in the case of Plaintiffs, even when Safeguard could not access the property or inspected the wrong property – without first considering whether the inspections were "reasonable or appropriate" or "necessary," as required under Plaintiffs' Fannie Mae/Freddie Mac uniform mortgage contracts.

Defendants continued to exceed their authority in this way until the filing of Plaintiffs' lawsuit. ███████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



Defendants' updated protocol creates at least a triable issue of fact as to whether the charges assessed to the Stitts were unlawful and demonstrates that, if they so desired, Defendants were capable of programming CitiLink to analyze the circumstances of a particular delinquent loan prior to assessing property inspection fees, as required by the Fannie Mae/Freddie Mac Uniform Mortgage Contracts and the investor servicing guidelines.  Defendants chose not to do so, however, and now the risk associated with their "Business As Usual" practice has materialized in this lawsuit.

### F.   Plaintiffs Relied On Defendants' Misrepresentations that the Challenged Property Inspection Fees were "Valid" Charges

After going to great lengths to establish "Plaintiffs knew about the [property inspection] fees *before* [they] paid them,"  (*see* MSJ at 1, 4-8, 10-11 (emphasis in original)), Defendants attempt to reverse course and argue that Plaintiffs "cannot show

justifiable or reasonable reliance," (*id.* at 16).  Needless to say, Defendants' argument is meritless.

With regard to the fraud cause of action, Plaintiffs allege that they reasonably expected Defendants to "comply with the disclosures set forth in the mortgage agreement, Notes, and Security Instruments, and as a result, Plaintiffs relied on Defendants' disclosures about fees on their statements, reasonably believing the 'Delinquency Expenses' to be valid charges."  (FAC at ¶ 142.)   Consistent with these allegations, Plaintiffs testified that they reviewed Defendants' monthly mortgage statements and letters demanding payment of "Delinquency Expenses," including property inspection fees, and paid the outstanding amounts under the belief that the fees were authorized. (Pifko Decl. ¶ 10, Ex. 9 at PP.182-190; *id.* ¶ 11 , Ex. 10 at PP. 193-206; *id.* ¶ 12, Ex. 11 at PP. 211-215.)

This evidence is more than sufficient to establish justifiable reliance on Defendants' misrepresentations for purposes of New York and Alabama common law fraud.  *See Twenty First Century L.P.I. v. LaBianca*, 19 F.Supp.2d 35, 40 (E.D.N.Y. 1998) (a plaintiff is entitled to rely on a representation made to him unless "under the circumstances, the facts should be apparent to one of [the plaintiff's] knowledge and intelligence from a cursory glance"); *Corva v. United Services Automobile Assoc.*, 108 A.D.2d 631, 633 (N.Y. 1985) (reliance is not justifiable if "any . . . normal person would recognize at once [the representation] as preposterous") ; *McConico v. Corley, Moncus and Bynum, P.C.*, 567 So.2d 863, (Ala. 1990) ("A plaintiff   . . . has not justifiably relied on the defendant's representation if that representation is 'one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.")

Moreover, unlike the cases cited by Defendants, (MSJ at 17), this is not a situation where Plaintiffs had "means available to [them] of knowing, by the exercise of ordinary intelligence, the truth or real quality" of Defendants' representations concerning their purported authority to demand payment of the challenged fees.  *DDJ Management, LLC v. Rhone Group LLC*, 15 N.Y.3d 147, 154 (2010) (explaining that the rule cited by

Defendants is "frequently applied . . . where the plaintiff is a *sophisticated business person or entity*" that claims to have been defrauded) (emphasis added).   This is especially true given Defendants' steadfast denial that they have done anything wrong. Nor is this a situation where Plaintiffs "discovered something which should serve as a warning that [they are] being deceived, [in which case they are] required to make an investigation of their own." *Twenty First Century L.P.I.*, 19 F. Supp. 2d at 40.   Therefore, Defendants' justifiable reliance argument lacks merit and should be rejected.

## IV.   SUMMARY JUDGMENT IS NOT WARRANTED AS TO PLAINTIFFS' UNJUST ENRICHMENT CLAIMS

Defendants argue that Plaintiffs' unjust enrichment claims fail, because Plaintiffs purportedly "cannot prove their underlying fraud claim." (MSJ at 19.) This argument merely incorporates Defendants' unpersuasive fraud arguments, and, therefore, should be summarily rejected. (*See* Section III, *supra*.)

Next, repeating an unsuccessful argument from their first motion to dismiss, Defendants contend that Plaintiffs' unjust enrichment claims are barred by their Fannie Mae/Freddie Mac uniform mortgage contracts. (MSJ at 19-20.)  In rejecting Defendants' argument at the pleading stage, this Court noted that "Plaintiffs seek to recover profits wrongfully obtained by Defendants through fraud," and held that "the authorities provided by Defendants under Alabama . . . and New York law are not persuasive and do not render Plaintiffs' [unjust enrichment] claims unavailable as a matter of law." *Stitt v. Citibank*, Case No. 4:12-cv-03892, Dkt. 21 at 19 (N.D. Cal. Apr. 25, 2013); *see also Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1090 (N.D. Cal. 2013) (rejecting argument that Plaintiffs' unjust enrichment claims fail because they are "based upon the [mortgage] contract[s]" and the "mortgage contracts 'permit' the charges at issue," and denying motion to dismiss).

There is no basis, in Defendants' motion or otherwise, for this Court to modify its prior ruling.  Under New York law, unjust enrichment claims are  available against a non-party to a written agreement covering the subject matter of the claim.  *Bildstein v.*

*MasterCard Int'l, Inc.*, 2005 WL 1324972, at *5 (S.D.N.Y. June 6, 2005); *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 41 (S.D.N.Y. 1991) ("the mere existence of a written contract governing the same subject matter does not preclude recovery from non-parties"); *see also Marketplace LaGuardia LP v. Harkey Enterprises*, 2008 WL 905188, at *6, n.6 (E.D.N.Y. Mar. 31, 2008) (in dicta, court found "persuasive" conclusion in *Seiden* that "the existence of a valid and enforceable contract does not necessarily preclude an unjust enrichment claim between a party to the contract and a third party"). Moreover, the existence of a written contract does not defeat an unjust enrichment claim where, as here, the alleged injury was caused by Defendants' fraudulent conduct which exceeded its authority under the contract. *See Bildstein*, 2005 WL 1324972, at *4 (S.D.N.Y. June 6, 2005) (unjust enrichment claim properly stated where plaintiff, who entered into agreement with bank to obtain MasterCard branded credit card, alleged MasterCard, a non-party to the agreement, collected an unlawful fee "from unknowing cardholders pursuant to a manipulative practice of nondisclosure"). Similarly, an unjust enrichment claim is available under Alabama law in this case, where, unlike the cases cited by Defendants (MSJ at 20), the Zirlotts do not allege a breach of contract claim, and the mortgage contract does not, and cannot, "afford[] [the Zirlotts] complete relief from any injustice arising from [Defendants'] retention of [their] payment." *White v. Microsoft Corp.*, 454 F. Supp. 2d at 1118, 1133 (S.D. Ala. 2006). Accordingly, there is no valid argument that Plaintiffs' unjust enrichment claims are precluded by the Fannie Mae/Freddie Mac uniform mortgage contract.

Nor can Defendants colorably assert that they were "not 'enriched' by Plaintiffs' inspection fees" because they "simply recovered from Plaintiffs the same fees that [their] vendor charged to conduct the inspections." (MSJ at 20.) Defendants were still enriched by Plaintiffs' payments because absent such payments Defendants would have had to absorb the costs for the property inspections.

Notably, the only cases Defendants cite in support of this out-of-pocket reimbursement argument are entirely inapposite. In *Bennett v. Visa U.S.A. Inc.*, 198

S.W.3d 747, 756-57 (Tenn. Ct. App. 2006), the plaintiffs alleged defendants unjustly received indirect benefits from their "tying arrangement," which forced Tennessee merchants to pay an artificially inflated price for defendants' credit processing services that the merchants then passed on to plaintiffs.  *Id.* at 756.  Unlike here, the defendants in *Bennett* had previously agreed to repay the inflated costs to the merchants as a part of a settlement agreement.  *Id.* Therefore, the Court of Appeals reversed the Chancery Court's finding that plaintiffs sufficiently alleged an unjust enrichment claim.  *Id.* at 757.

Defendants' other case, *American Movie Classics v. Rainbow Media Holdings*, 508 Fed. Appx. 826 (10th Cir. 2013), is even further afield.  In *American Movie Classics*, a cable network brought an unjust enrichment claim against an advertiser for the cost of advertising that had appeared on the network.  *Id.* at 833.  The network's claim failed because the advertiser paid the network's agency for the advertising, and it was the agency that failed to remit payment to the network.  *Id.*  As with *Bennett*, *American Movie Classics* is readily distinguishable from this case and fails to advance Defendants' argument.

## V.     DEFENDANTS WAIVED THEIR "NOTICE-AND-CURE" ARGUMENT

After more than three years of active litigation, Defendants now contend, for the first time, that the Stitts' fail to state fraud and unjust enrichment claims, because they did not provide the "requisite notice."  (MSJ at 21.)  As a threshold matter, the notice requirement in Paragraph 20 applies only to the Stitts and the "Lender," not a "Loan Servicer" (which is a separate defined term in the same paragraph).  (*See* Defs' SUMF at 4-1.)  This is a sufficient basis, in and of itself, to reject Defendants' argument.

Additionally, Defendants' argument is untimely.  Even assuming Defendants are correct that some form of pre-suit notice was required (and it was not), then the notice argument necessarily arose at the time of filing.  To this end, Defendants cannot dispute that they knew, or should have known, about the "notice-and-cure" provision at the pleading stage, because they attached, and requested judicial notice of, the Zirlotts' mortgage contract in support of their first motion to dismiss.  (*See* Dkt. 5-1, 6.)

1    Nevertheless, unlike in the cases they cite, (*see* MSJ at 21), Defendants chose **not** to raise

2    the purported lack of notice in either of their two Rule 12(b)(6) motions.  (*See, e.g.*, Dkt.

3    5, 70.)  Accordingly, Defendants have waived the newly contrived notice argument, and

4    are therefore precluded from asserting it at this advanced stage of the litigation.  *See* Fed.

5    R. Civ. P. 12(g)(2) (Rule 12(g) provides that "[e]xcept as provided in Rule 12(h)(2) or

6    (3)," which are inapplicable here, "a party that makes a motion under [Rule 12] must not

7    make another motion under this rule raising a defense or objection that was available to

8    the party but omitted from its earlier motion"); *Yumul v. Smart Balance, Inc.*, 2011 WL

9    1045555, at *4 (C.D. Cal. Mar. 14, 2011) (the "well-established principle" that a party

10   waives a Rule 12 defense or objection omitted from an earlier motion "prevents litigants

11   from taking a 'second bite at the apple'"); *FRA S. p. A. v. Surg-O-Flex of America, Inc.*,

12   415 F. Supp. 421, 426 (S.D.N.Y. 1976) ("It is clear that the practice contemplated by Rule

13   12 is one which avoids a series of motions resulting in delay and dilatory tactics.")

14   **VI.    DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENT FAILS**

15           Defendants contend that the Zirlotts' fraud and unjust enrichment claims are

16   barred, in part, under Alabama's statute of limitations.  (MSJ at 22.)  This argument fails

17   for several reasons.

18           First, Defendants' Answers fail to reference, much less sufficiently plead, a statute

19   of limitations defense.  (*See, e.g.*, Dkt. 25, 100.)  Therefore, any such defense has been

20   waived.  *See Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) (explaining that,

21   under Federal Rule of Civil Procedure 8(c), "a party, with limited exceptions, is required

22   to raise every defense in its first responsive pleading, and defenses not so raised are

23   deemed waived"); *see also* 5 Charles Alan Wright & Arthur Miller, *Federal Practice &*

24   *Procedure* § 1278, at 644-45 (3d ed. 2004) ("[I]t is a frequently stated proposition of

25   virtually universal acceptance by the federal courts that a failure to plead an affirmative

26   defense as required by Federal Rule 8(c) results in the waiver of the defense.")

27           Even assuming Defendants could assert a statute of limitations defense, their

28   argument nevertheless fails.  Contrary to Defendants' motion, the Zirlotts seek to invoke

the discovery rule on grounds that Defendants affirmatively misrepresented their authority to assess the inspection fees at issue.  (FAC at ¶¶ 74-76.)  To this end, the Zirlotts allege that they "could not have discovered, through the exercise of reasonable diligence, the true nature of the unlawful fees assessed against their account[]."  (*Id.* ¶ 76.)  Rather than address these allegations, Defendants' motion focuses entirely on whether the Zirlotts were aware that "they had been charged for multiple property inspection fees."  (MSJ at 22.)  However, merely being aware of multiple inspection fee charges would not, in and of itself, "put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry."  *Wheeler v. George*, 39 So. 3d 1061, 1081 (Ala. 2009).  Therefore, Defendants' motion fails to establish, as it must, that there is no genuine issue of material fact as to the application of the discovery rule.  For this reason, Defendants' statute of limitations argument should be denied, and the merits of the discovery rule should be determined by the jury.  *Beneficial Standard Life Ins. Co. v. Madariaga,* 851 F.2d 271, 275 (9th Cir.1988) (citations omitted) ("Ordinarily, [courts] leave the question of whether a plaintiff knew or should have become aware of a fraud to the jury.")

## VII.   THERE IS SUFFICIENT EVIDENCE TO RAISE A TRIABLE ISSUE AS TO WHETHER CITIBANK CAN BE HELD LIABLE UNDER AN AGENCY THEORY

Defendants argue that Citibank cannot be held liable under an agency theory, because "Citibank has 'no direction or influence over CitiMortgage's decision making and policies and procedures for day-to-day operations.'"  (MSJ at 23.)  This argument is directly undermined by the April 2011 Consent Order.

As part of the Consent Order, the Office of the Comptroller of the Currency ("OCC") issued findings -- which Citibank did not deny -- concerning Citibank's ***pre-2011*** conduct.  More specifically, the OCC found that "[Citibank] is among the largest servicers of residential mortgages in the United States, and services a portfolio of 4,000,000 residential mortgage loans."  (Pifko Decl. ¶ 14, Ex. 13 at P. 223.)  The OCC further found that, in connection with its "residential mortgage servicing portfolio," Citibank was, in fact, involved in day-to-day servicing operations, including:

1

2

3

4

5

6

7

8

9

10

11

> (a) fil[ing] or caus[ing] to be filed in state and federal courts affidavits executed by [Citibank's] employees or employees of third-party service providers . . . in which the affiant represented that the assertions were based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;

> (b) fil[ing] or caus[ing] to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary; [and]

> (c) litigat[ing] foreclosure proceedings and initiat[ing] non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time[.]

12

13

(*Id.* ¶ 14, Ex. 13 at PP. 223-224 (finding that, "by reason of [this] conduct . . . [Citibank] engaged in unsafe or unsound banking practices").)

14

15

16

17

18

19

20

21

        The 2011 Consent Order also addressed areas of weakness identified by the OCC in Citibank's mortgage loan servicing activities and related functions.  (*Id.* ¶ 14 , Ex. 13 at PP. 227-233.)  As required by the OCC Consent Order, Citibank established a "Compliance Committee" to enhance the Citibank's existing oversight of CitiMortgage. (*Id.* ¶ 14, Ex. 13 at P. 224.)  Sanjiv Das, a Senior Vice President of Citibank *and* the Chief Executive Officer of CitiMortgage, was appointed Chairman of the Compliance Committee and charged with the responsibility of overseeing CitiMortgage's loan servicing activities.

22

23

24

25

26

27

        At a minimum, this evidence raises a genuine dispute regarding Citibank's "direction or influence" over CitiMortgage's day-to-day operations, which must be decided by the jury.  *See Anderson*, 477 U.S. at 255 (holding that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").  Therefore, Defendants' motion for summary judgment as to Citibank's liability under an agency theory must be denied.

28

## VIII. CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion for summary judgment in its entirety.


Dated:  April 25, 2016                         BARON & BUDD, P.C.


                                    By:  /s/  Mark Pifko
                                              Mark Pifko


                                         Daniel Alberstone (SBN 105275)
                                         Roland Tellis (SBN 186269)
                                         Mark Pifko (SBN 228412)
                                         Michael Isaac Miller (SBN 266459)
                                         BARON & BUDD, P.C.
                                         15910 Ventura Boulevard, Suite 1600
                                         Encino, California  91436
                                         Telephone:  (818) 839-2333
                                         Facsimile:    (818) 986-9698

                                         Marguerite K. Kingsmill (*pro hac vice*)
                                         mkingsmill@kingsmillriess.com
                                         Charles B. Colvin (*pro hac vice*)
                                         ccolvin@kingsmillriess.com
                                         KINGSMILL RIESS, L.L.C.
                                         201 St. Charles Avenue, Suite 3300
                                         New Orleans, Louisiana 70170
                                         Telephone:  (504) 581-3300
                                         Facsimile:    (504) 581-3310

                                         Philip F. Cossich, Jr. (*pro hac vice*)
                                         David A. Parsiola (*pro hac vice*)
                                         COSSICH, SUMICH,
                                         PARSIOLA & TAYLOR, L.L.C.
                                         8397 Highway 23, Suite 100
                                         Belle Chasse, Louisiana 70037
                                         Telephone:  (504) 394-9000
                                         Facsimile:    (504) 394-9110

                                         Attorneys for Plaintiffs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GLORIA STITT, RONALD STITT, MARK ZIRLOTT, and TERRI LOUISE ZIRLOTT, individually, and on behalf of other members of the public similarly situated

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT