1

2

3

4

5

6       UNITED STATES DISTRICT COURT

7       NORTHERN DISTRICT OF CALIFORNIA

8   **GLORIA STITT, *et al.*,**                    Case No.: 12-cv-03892- YGR

9            Plaintiffs,                    **ORDER GRANTING DEFENDANTS' MOTION
10                                          FOR SUMMARY JUDGMENT**

            vs.
11                                          Re: Dkt. Nos. 170, 196

12  **CITIBANK, NATIONAL ASSOCIATION AND
    CITIMORTGAGE, INC.,**
13
             Defendants.
14

        Now before the Court is defendants CitiBank, National Association's and CitiMortgage,

15  Inc.'s (collectively, "Citi") motion for summary judgment on the named plaintiffs' individual claims.

16  (Dkt. No. 170.)[1]  Plaintiffs Gloria Stitt, Ronald Stitt, Mark Zirlott, and Teri Zirlott oppose.  Having

17  carefully considered the papers submitted and the pleadings in this action, oral argument held on July

18  19, 2016, and for the reasons set forth below, the Court hereby **GRANTS** defendants' motion.[2]

19      **I.     BACKGROUND**

20          This case arises out of plaintiffs' combined payment of $310.50 to Citi for property

21  inspections performed when plaintiffs were in default on their mortgage payments.  Plaintiffs' case

22  has evolved significantly since it was filed.  Plaintiffs originally accused Citi of assessing borrowers

23

24  _____

25          [1]  The Court resolves the administrative motions to seal documents submitted in connection
    with the substantive motion through separate orders entered this date.

26
            [2]  Also before the Court is plaintiffs' ex parte application for leave to file supplemental
27  evidence in opposition to Citi's motion for summary judgment.  (Dkt. No. 196.)  Defendants do not
    oppose.  (Dkt. No. 197.)  In light of defendants' non-opposition, and for good cause showing, the
28  Court **GRANTS** plaintiffs' ex parte application.

*United States District Court
Northern District of California*

United States District Court
Northern District of California

for default-related fees for property inspections[3] Citi allegedly marked-up from the cost it paid a third-party vendor.  (Dkt. No. 1 ¶ 2.)  While the complaint did reference purportedly "unnecessary" fees, the gravamen of plaintiffs' first complaint was Citi's alleged mark-up of the fees.[4]

Discovery revealed that Citi never marked-up property inspection fees.  Citi, in its role servicing home mortgage loans, has always charged the borrower exactly what Citi is billed by the third-party vendor performing a property inspection.  Plaintiffs' first amended complaint removed all mark-up allegations.  (Dkt. No. 69, "FAC.")  The FAC accused Citi of charging borrowers for allegedly "unnecessary" property inspections and then fraudulently concealing the charges by using cryptic descriptions such as "delinquency expenses."  (*Id.* ¶¶ 2–4, 9–10.)  The FAC asserted class allegations on behalf of a proposed class defined as: "All residents of the United States . . . who had a loan serviced by CitiMortgage and whose accounts were assessed fees for default-related services, including . . . property inspection fees, at any time . . . ."  (*Id.* ¶ 80.)  Only plaintiffs' fraud and unjust enrichment claims survived Citi's motion to dismiss the FAC.  (*See* Dkt. No. 98.)

On June 9, 2015, plaintiffs moved to certify a broad nationwide unjust enrichment class, a New York fraud class, and an Alabama fraud class.  (Dkt. No. 113.)  The Court denied plaintiffs' motion.  (Dkt. No. 151.)  As to the unjust enrichment class, the Court denied certification of a nationwide class in light of the Ninth Circuit's holding in *Mazza v. Am. Honda Motor Co.*, that the "elements necessary to establish a claim for unjust enrichment . . . vary materially from state to state."  666 F.3d 581, 591 (9th Cir. 2012).  With respect to the proposed New York and Alabama fraud classes, plaintiffs advanced two theories of fraud, namely that Citi: (1) implicitly misrepresented property inspection fees were charged to plaintiffs in accordance with their mortgage agreements, when in fact the charges were neither valid nor due; and (2) concealed the property inspection fee charges by using the allegedly inaccurate description of "delinquency expenses" on

---

[3]  Plaintiffs' original complaint and first amended complaint on behalf of a nationwide class and certain subclasses also alleged the same conduct with respect to Broker Price Opinions ("BPOs").  (*See* Dkt. Nos. 1, 69.)  Plaintiffs have since dropped their claims concerning BPOs entirely.

[4]  The Court sets forth a more detailed background on the evolution of plaintiffs' claims in its order issued this date denying plaintiffs' motion for an order entitling them to a catalyst fee award.

United States District Court
Northern District of California

1    their monthly mortgage statements.  As to the first theory, the only common evidence presented was

2    Citi's use of its software management system CitiLink to order and charge delinquent borrowers for

3    property inspection fees at certain time intervals automatically.  Based thereon, the Court concluded

4    that a classwide determination as to the manner in which Citi ordered and charged property

5    inspection fees through CitiLink would not make the property inspection charges *per se*

6    unauthorized.  Said otherwise, no common questions existed that would lead to common answers for

7    the classes.  As to the second theory, the Court found it unsupported by the record because Citi

8    defined the term "delinquency expenses" to include property inspection fees on the borrowers'

9    monthly mortgage statements.  As such, the Court declined to certify any class.  The Court

10   subsequently denied plaintiffs' request for leave to file a renewed motion for class certification.

11   (Dkt. No. 163.)

12         Only the named plaintiffs' individual claims remain.  Defendants now move for summary

13   judgment on the fraud and unjust enrichment claims brought by the Stitts and Zirlotts under the laws

14   of New York and Alabama, respectively.  In accordance with the Court's order on class certification,

15   plaintiffs are not pursuing their second theory of fraudulent conduct.  Instead, plaintiffs now proceed

16   only under their first theory, *i.e.* that Citi misrepresented its authority under the mortgage agreements

17   to assess plaintiffs for property inspection fees.  The Stitts seek damages in the amount of six $13.50

18   charges for property inspections Citi ordered when they were in default – for a total of $81.  (SMF[5]

19   1-11, 1-12.)  The Zirlotts seeks damages in the amount of seventeen charges (either $13.50 or $15.00

20   each) for property inspections Citi ordered when they were in default – for a total of $229.50.  (SMF

21   2-14, 2-15, 2-18, 2-19.)

22   **II.    LEGAL STANDARD ON SUMMARY JUDGMENT**

23         A party seeking summary judgment bears the initial burden of informing the court of the basis

24   for its motion, and of identifying those portions of the pleadings and discovery responses that

25   demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

26

27         [5] All references to defendants' Statement of Material Facts, or "SMF," refer to the fact
28   number stated therein as well as the supporting evidence cited therein for that fact.  Unless otherwise
     noted, the facts cited to herein were undisputed by plaintiffs.

United States District Court
Northern District of California

1  323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty*

2  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is

3  sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

4       On an issue where the nonmoving party will bear the burden of proof at trial, the moving

5  party can prevail merely by pointing out to the district court that there is an absence of evidence to

6  support the nonmoving party's case.  *Celotex*, 477 U.S. at 324–25; *Soremekun v. Thrifty Payless,*

7  *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the moving party meets its initial burden, the opposing

8  party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.

9  *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e).  The opposing

10  party's evidence must be more than "merely colorable" and must be "significantly probative."

11  *Anderson*, 477 U.S. at 249-50.  Further, the opposing party may not rest upon mere allegations or

12  denials of the adverse party's evidence, but instead must produce admissible evidence showing there

13  is a genuine dispute of material fact for trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210

14  F.3d 1099, 1102-03 (9th Cir. 2000).  Disputes over irrelevant or unnecessary facts will not preclude a

15  grant of summary judgment.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

16  630 (9th Cir. 1987).

17       Nevertheless, when deciding a summary judgment motion, a court must view the evidence in

18  the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

19  *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  A district

20  court may only base a ruling on a motion for summary judgment upon facts that would be admissible

21  in evidence at trial.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P.

22  56(c).  Further, it is not a court's task "to scour the record in search of a genuine issue of triable fact,"

23  but is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence

24  that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal

25  quotations omitted); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th

26  Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine

27  issue of fact, where the evidence is not set forth in the opposing papers with adequate references so

28  that it could conveniently be found").

The parties agree that New York and Alabama law govern plaintiffs' claims. The Stitts' mortgage establishes that their agreement is governed by federal law and the laws of New York State (SMF 1-16) while the Zirlotts' mortgage establishes that that their agreement is governed by the laws of Alabama where the property is located (SMF 2-21.) Accordingly, the Court evaluates the parties' arguments in light of New York and Alabama laws of fraud and unjust enrichment.[6]

**III.   DISCUSSION**

**A.   Fraud**

To maintain a fraud claim under the laws of New York and Alabama, plaintiffs bear the burden to prove: (1) a material misrepresentation or omission of fact, (2) which defendants knew to be false, (3) made for the purpose of inducing plaintiffs to rely upon it, (4) justifiable or reasonable reliance, and (5) injury caused by the misrepresentation or omission. *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011); *Mantiply v. Mantiply*, 951 So.2d 638, 653 (Ala. 2006). Citi argues that plaintiffs cannot establish any of the five requisite elements of a fraud claim. The Court begins with element one, or a material misrepresentation or omission of fact. Finding at the outset that plaintiffs cannot establish element one as a matter of law, the Court declines to address the remaining elements.

Citi argues that plaintiffs cannot show a misrepresentation of fact for purposes of element one because the implicit misrepresentation at issue is of law, not fact. As discussed above, plaintiffs base their fraud claims on Citi's implicit misrepresentation that property inspection fees were charged in accordance with the plaintiffs' mortgage agreements, when in fact the charges were neither valid nor due. Citi argues this is an alleged misrepresentation of law (*i.e.* misrepresenting contractual authority), which is not an actionable statement for purposes of fraud. The Court agrees.

The alleged misrepresentation that forms the basis of plaintiffs' fraud claim is Citi falsely implying to plaintiffs that it had the contractual authority to charge plaintiffs for the property

---

[6] Citi additionally argues that, even if plaintiffs' theory of misrepresentation were tenable, Citi is also entitled to summary judgment on plaintiffs' claims as there is an absence of evidence to support the elements of their claims. Furthermore, Citi argues no disputes of material fact prevent entry of judgment in favor of Citi. Because the Court finds the fraud and unjust enrichment claims fail based on plaintiffs' theory of wrongdoing, the Court does not reach Citi's alternative arguments going to the sufficiency of the evidence.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    inspection fees.  This is an opinion of law not subject to a fraud claim.  "It is . . . well settled, as a

2    general rule, that fraud cannot be predicated upon misrepresentations as to matters of law."  *Miller v.*

3    *Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) (quoting *Am. Jur. 2d of Fraud and Deceit* §

4    97 (2001) (alteration in original)).  As the Ninth Circuit has highlighted, the "Restatement explains

5    that where a misrepresentation of law is only one of opinion, rather than one that includes a

6    misrepresentation of fact, the recipient can only justifiably rely on it to the extent that he can

7    justifiably rely on other opinions."  *Yokohama*, 358 F.3d at 621 (citing *Restatement (Second) of Torts*

8    § 545 (1977)).  Misrepresentations as to matters of law are only actionable for fraud upon a showing

9    of special circumstances.[7]  *Id.*

10          The Court finds that plaintiffs' challenge is to Citi's legal opinion that it was contractually

11   authorized to pass along the property inspection fees to plaintiffs under the terms of their respective

12   mortgages – as stated implicitly in the monthly mortgage statements sent to plaintiffs.  But it is well-

13   established that, "[a]s a rule, fraud cannot be predicated on misrepresentations as to the legal effect of

14   a written instrument as, for example . . . a note and mortgage . . . ."  *37 Am. Jur. 2d Fraud and Deceit*

15   § 102 (2016) (footnotes omitted).  Here, the implicit misstatement relates to Citi's interpretation of its

16   authority under the mortgage agreements.  These allegedly fraudulent statements are not actionable.

17   They are nothing more than Citi's legal opinion of the effect of the terms of the mortgage agreement.

18   *See e.g. Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 511 (2d Cir. 1977) (testimony

19   regarding interpretation of contract was improper "legal conclusion" opinion testimony); *Mutual Life*

20   *Ins. Co. of New York v. Phinney*, 178 U.S. 327, 342–43 (1900) (where both parties are privy to the

21   terms of a contract, one party's statement of his interpretation thereof is an "expression of an opinion

22   as to the law of the contract, and not a declaration or admission of a fact").  No fraud claim may be

23   based thereon.

24   ///

25   _____

26          [7]  Plaintiffs do not argue that such special circumstances are present here, relegating their
     response to defendants' argument to a single footnote: "Contrary to Defendants' motion, Plaintiffs'
27   fraud claims are based misrepresentations of fact (i.e. that the challenged property inspection fees
     were authorized under the Fannie Mae/Freddie Mac uniform mortgage contracts at issue)."  (Dkt. No.
28   182 at 11, n. 4.)  Plaintiffs thus waived whether any special circumstances could save their fraud
     claims, and the Court declines to address the issue.

United States District Court
Northern District of California

The Court's conclusion that no fraud claim exists based on alleged misrepresentations of contractual authority is supported by New York and Alabama law barring fraud claims where the conduct relates to an alleged breach of contract.  As discussed in its order denying class certification, the ultimate dispute is whether Citi acted in such a way that breached the terms of plaintiffs' mortgage agreements authorizing property inspection fees in certain circumstances.  "Under New York law, a cause of action sounding in fraud cannot be maintained when the only fraud charged relates to a breach of contract." *Ellington Credit Fund, Ltd. v. Select Portfolio Svcg., Inc.*, 837 F. Supp. 2d 162, (S.D.N.Y. 2011); *see also W.B. David & Co., Inc. v. DWA Comm'ns, Inc.*, 2004 WL 369147, at *3 (S.D.N.Y. Feb. 26, 2004) (courts applying New York law do not "recognize claims that are essentially contract claims masquerading as claims of fraud") (citations omitted).  Similarly, in Alabama there is a "general rule against turning a breach-of-contract action into a tort," where additional circumstances do not warrant such a claim.  *Exxon Mobil Corp. v. Ala. Dept. of Conserv. & Nat. Res.*, 986 So.2d 1093, 1130 (Ala. 2007) (Lyons, J., concurring in part).  Such circumstances have been found where, for example, the defendant fraudulently concealed material facts during the performance of the agreement, including the defendant's "serious ongoing problems with regulatory authorities that cast substantial doubt on its ability to perform." *Id.* (citing *Deupree v. Butner*, 522 So.2d 242 (Ala. 1988)).  In that regard, a defendant's misrepresentation of facts going to its ability to perform gave rise to a fraud claim separate from a breach of contract claim.  Here, the only alleged misrepresentation is of Citi's legal authority under the contract to assess pass-through fees.  This is in stark contrast to plaintiffs' original allegations of mark-up: that Citi withheld from borrowers the material fact that they were being charged for inflated property inspection fees.  Under their current theory of fraud, however, plaintiffs present no evidence that Citi had knowledge of facts unavailable to plaintiffs.  This is a classic breach of contract claim inappropriately repackaged as fraud.

Plaintiffs principally rely on *Young v. Wells Fargo & Co.* for the proposition that their fraud claim is not simply a breach of contract claim.  671 F. Supp. 2d 1006 (S.D. Iowa 2009).  In *Young*, plaintiffs alleged that Wells Fargo "engaged in a systematic course of conduct to defraud mortgage borrowers," in connection with default-related services under the terms of their mortgages. *Id.* at 1034.  In the relevant order, the district court was ruling on Wells Fargo's motion to dismiss

plaintiffs' claims for violation of RICO and various state consumer protection laws.  In that context, the district court denied Wells Fargo's motion:

> The Court is not persuaded by Wells Fargo's attempt to construe Plaintiffs' allegations as a contract dispute. Though the basis of Plaintiffs' relationship to Wells Fargo was established by contract, Plaintiffs have alleged that Wells Fargo's practices constitute a systematic scheme to charge excessive fees and conceal those fees from mortgagors. Contrary to Wells Fargo's characterization of case law on the topic, it is well settled that allegations that a defendant engaged in deceptive business practices can support a claim for breach of contract or fraud, even when the defendant's actions are also contrary to the terms of a valid contract.

*Id*. at 1033–34 (footnote omitted) (citing cases).  *Young* is distinguishable for three reasons.  First, the cited order was decided on a motion to dismiss, not summary judgment.  Second, *Young* involved allegations that Wells Fargo concealed inspection fees on its billing statements, a theory of fraud no longer pursued in this case.  Finally, the above-quoted passage relied on by plaintiffs was in the context of violations of RICO and unfair competition laws, not common law fraud.  RICO and unfair competition laws prohibit business practices which, *inter alia¸* demonstrate a pattern of fraudulent or unfair activity.  *See id.; Huyer v. Wells Fargo & Co.*, 295 F.R.D 332, 348 (S.D. Iowa 2013).  Indeed, the district court in *Young* did not address the elements of a common law fraud claim in the relevant portion of the order, instead casting the allegations as a scheme to defraud under RICO.  *Id*. at 1031.  *Young* does not persuade.

For the first time at oral argument, plaintiffs argued they are precluded from stating a breach of contract claim against Citi absent privity between Citi as a loan servicer and plaintiffs as the borrowers.  Thus, in plaintiffs' view, the existence of the mortgage contract cannot bar their fraud claims.  In support of that proposition plaintiffs cited to the Second Circuit's recent decision of *Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016).  In that case, borrowers brought a class claim for breach of contract against defendant for overcharging late fees on their mortgages.  Defendant acted as servicer for some class members and the lender for others.  Following trial, the district court decertified the class because there was no class-wide evidence that borrowers whose loans were merely serviced by the defendant were in privity of contract with the defendant.  The only evidence of privity submitted was the testimony of the class's expert that borrowers generally can sue their

United States District Court
Northern District of California

servicers for breach of contract. The Second Circuit affirmed the district court, noting that this evidence did not establish privity for those absent class members for whom defendant was only a servicer. *Id.*

The Court agrees with Citi that plaintiffs' belated[8] reliance on *Mazzei* is misplaced. The holding in *Mazzei* was limited. Contrary to plaintiffs' implication at oral argument, *Mazzei* does not stand for the proposition that servicers are never in privity with servicers of their mortgages. The Second Circuit was concerned only with class-wide proof of privity, noting that privity would be a claimant-specific inquiry. Here, plaintiffs presented no evidence, argument, or authority for the proposition that the named plaintiffs are not in privity with Citi[9] such that their fraud claim is not barred by the availability of a breach of contract claim. It is plaintiffs' burden to do so to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (nonmoving party must present specific facts showing movant is not entitled to summary judgment). Regardless, lack of privity would not alter the Court's chief conclusion that misrepresentations of law are not actionable as fraud claims. Plaintiffs' eleventh hour argument simply cannot revive their incurable claims for fraud.

For the foregoing reasons, the Court concludes that plaintiffs' evidence of a fraudulent misrepresentation is lacking as a matter of law. Citi's motion for summary judgment on plaintiffs' fraud claims is **GRANTED**.

///

///

---

8   Although the Second Circuit decision issued just two days before oral argument in this case, the Southern District of New York's order decertifying the class – based on substantially similar reasoning – was issued more than a year prior in May 2015. *See Mazzei v. Money Store*, 308 F.R.D. 92 (S.D.N.Y. 2015). To the extent the holding in *Mazzei* is relevant to plaintiffs' new lack-of-privity argument, it was knowable to plaintiffs when they filed their opposition to defendants' motion for summary judgment. Plaintiffs simply failed to raise the issue timely.

9   Citi, while under no obligation to do so, submitted evidence in support of a finding of privity. First, plaintiffs' expert Professor Adam Levitin testified over attorney objection at his deposition that plaintiffs could have asserted a breach of contract claim. (Dkt. No. 170-52 at 3–6.) Second, the Stitts' loan originated with a company that has since merged into CitiMortgage. (*See* Dkt. No. 170-4 at 2.)

United States District Court
Northern District of California

### B.  Unjust Enrichment

Citi moves for summary judgment on plaintiffs' unjust enrichment claims, arguing the fraud-based unjust enrichment claims fall with plaintiffs' fraud claims under the laws of New York and Alabama.[10]  Plaintiffs' opposition does not address this proposition.  Rather, plaintiffs contend the argument should be summarily rejected as their fraud claims survive.  The Court reads this as an implicit concession by plaintiffs that their fraud-based unjust enrichment claims are defeated if the underlying fraud claims fail.

Under New York and Alabama law, plaintiffs cannot recover on a claim for unjust enrichment where their contract or tort claims are defective.  *See Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (unjust enrichment claim due to be dismissed because wrongdoing not separate or apart from contract and tort claims); *Flying J. Fish Farm v. Peoples Bank of Greensboro*, 12 So.3d 1185, 1193 (Ala. 2009) (affirming summary judgment on unjust enrichment claims as plaintiffs' deceit claims failed, and so plaintiffs could not "show that they paid any moneys to [defendants] because of mistake or fraud").  While unjust enrichment is its own separate cause of action in both jurisdictions, the New York Court of Appeals cautions that "unjust enrichment is not a catchall cause of action to be used when others fail."  *Corsello*, 967 N.E.2d at 1185.  Rather, an unjust enrichment claim should be "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Id*.  Thus, where plaintiffs' contract or tort claims "are defective, an unjust enrichment claim cannot remedy the defects."  *Id*.

As discussed, *supra*, Citi is entitled to summary judgment on plaintiffs' fraud claims.  Plaintiffs do not allege some "unusual situation" warranting recovery under unjust enrichment here.  As such, Citi is entitled to summary judgment on the fraud-based unjust enrichment claims for the same conduct.  Citi's motion for summary judgment on the unjust enrichment claims is **GRANTED**.

---

[10]  Citi also moves on other grounds, namely arguing that: (1) the existence of the mortgage contracts expressly governing the subject matter precludes recovery in quasi-contract; and (2) receiving reimbursement of pass-through costs is not unjust.  The Court declines to reach these additional arguments because Citi is otherwise entitled to summary judgment on plaintiffs' unjust enrichment claims.

United States District Court
Northern District of California

### C.  Other Grounds for Summary Judgment

Lastly, Citi presents the Court with three further grounds to grant summary judgment in its favor either in whole or in part.  First, Citi asserts the Stitts' claims are wholly barred because there is no evidence the Stitts complied with their mortgage agreement's notice-and-cure provision prior to commencing this lawsuit.  Second, Citi asserts that the evidence shows the Zirlotts' claims are untimely in part based on Alabama's two-year statute of limitations.  Third, Citi argues there is no evidence suggesting that Citibank can be held liable for the practices of defendant CitiMortgage under an agency theory.  On that basis, Citi asks the Court to grant summary judgment on all claims asserted against defendant Citibank.  Plaintiffs oppose, arguing summary judgment is inappropriate on these three grounds.

As discussed in Sections III.A and III.B, *supra*, the Citi defendants are entitled to summary judgment on the entirety of plaintiffs' remaining claims for fraud and unjust enrichment.  The Court therefore declines to address the parties' arguments on these three additional grounds.

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment on plaintiffs' claims for fraud and unjust enrichment (Dkt. No. 170).  The Court also **GRANTS** plaintiffs' unopposed ex parte application for leave to file supplemental evidence (Dkt. No. 196).

Defendants shall file a proposed form of judgment approved as to form by plaintiffs within seven (7) days of the date of this Order.

This Order terminates Docket Numbers 170, 196.

**IT IS SO ORDERED**.

Dated: October 5, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California